**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 7 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

TUAN ANH NGUYEN,

    Petitioner-Appellant,

      v.

DANIEL REYNOLDS, Warden,
Oklahoma State Penitentiary; LARRY
FIELDS, Director, Oklahoma
Department of Corrections; SUSAN B.
LOVING, sued as: Susan Brimer
Loving, Attorney General of the State
of Oklahoma,

    Respondents-Appellees.

No. 96-5254

---

Appeal from United States District Court
for the Northern District of Oklahoma
(D.C. No. 94-CV-688-K)

---

Janet G. Chesley, Office of Federal Public Defender (Scott W. Braden, Federal
Public Defender, with her on the brief), Oklahoma City, for the petitioner-
appellant.

Robert Whittaker (Diane Blaylock with him on the brief), Office of Attorney
General, Oklahoma City, for the respondents-appellees.

---

Before BALDOCK, KELLY, and BRISCOE, Circuit Judges.

---

BRISCOE, Circuit Judge.

Petitioner Tuan Anh Nguyen was convicted in Tulsa County, Oklahoma, of three counts of first degree murder and was sentenced to death on two of the counts and to life imprisonment on the remaining count. After exhausting his state court remedies, petitioner filed this § 2254 habeas petition challenging his convictions and sentences. The district court denied relief and Nguyen appeals. We affirm.

I.

Nguyen was born and raised in Vietnam. In 1975, at the age of 15, he and other members of his family left Saigon and eventually made their way by boat to a refugee camp in Indian Town Gap, Pennsylvania. A church in Columbus, Indiana, sponsored the family and assisted them in relocating to a house in Columbus.

Nguyen dated Donna Barthlow, a fellow high school student in Columbus. During the summer of 1978 they eloped to Washington state. A short time later they moved to Bartlesville, Oklahoma, where they lived with Nguyen's uncle and attended school. The couple eventually dropped out of school, returned to Columbus for a brief period, and then moved to Tulsa, Oklahoma. While in Tulsa, the couple had a son, Nathaniel. During this time period, the couple argued and Nguyen began to exhibit jealous behavior. Due to limited finances,

beginning in March 1982, the family shared a house with Donna's cousin Myra White, Myra's husband Joseph, and the Whites' two young children, Joseph (age 6) and Amanda (age 3). In mid-May 1982, Donna asked Nguyen to move out of the house because she wanted a divorce. He agreed and stayed with a friend, Tony Aguillar, who lived close to the Whites' house.

At approximately 10:50 p.m. on the evening of May 23, 1982, Myra White left her house for work at a nearby gas station. After cleaning up around the house, Joseph White also left the house and joined his wife at work shortly before midnight. At the time Joseph White left the house, his two children were asleep in their upstairs bedroom, and Donna and Nathaniel were downstairs in the living room. The Whites worked through the night and returned home between 7:00 and 8:00 the following morning. Upon arrival at their home, the Whites discovered the front door was unlocked. Inside, they found Donna stabbed to death in the living room; Nathaniel was crying but unharmed in a playpen near Donna's body. Joseph White went upstairs and discovered the bodies of his two children on the floor of their bedroom. Both had been stabbed to death. A bent and bloody kitchen knife was found downstairs near Donna's body.

At approximately 1:00 a.m. on May 24, 1982, Nguyen was seen at a convenience store two miles from the murder scene. Between 1:30 and 2:00 a.m., he visited Rick Brown, an acquaintance who lived in an apartment one-half mile

from the murder scene. Nguyen was holding a shirt in his hands when Brown answered the door to his apartment, and Nguyen asked to use the bathroom. He stayed in the bathroom, with the water running, for several minutes. When he came out of the bathroom, Nguyen asked Brown for a ride and a dry shirt. Brown gave him a dry shirt and Nguyen left the apartment on foot, leaving behind his wet shirt. Between 5:00 and 5:30 that same morning, Tony Nguyen and Tien Bach drove Nguyen to a Howard Johnson's restaurant on Highway 44, where they dropped him off and gave him $15. Two days later, on May 26, 1982, Bach received a collect call from Nguyen. Bach asked Nguyen if he had killed his wife and Nguyen admitted that he had. Nguyen was charged with three counts of first degree murder in June 1982.

Nguyen was eventually arrested in Tucson, Arizona, in 1986 following a domestic disturbance between Nguyen and Mychau Truong, a teenage girl with whom he was living. Nguyen had met Truong at a wedding in Milwaukee, Wisconsin, in the summer of 1984. The two moved to Louisiana, where Nguyen regularly beat Truong and kept her a virtual prisoner in their trailer home. They eventually moved to Arizona, where Nguyen continued to beat her. During one of the beatings, while Truong was pregnant with Nguyen's child, Truong shot Nguyen. Nguyen was arrested after this incident and transported to Tulsa on June 30, 1986, to stand trial on the pending murder charges.

A jury convicted Nguyen of three counts of first degree murder. At the conclusion of the sentencing phase of trial, the jury found the existence of three aggravating factors: (1) the murder of the White children was especially heinous, atrocious, or cruel; (2) Nguyen's actions presented a great risk of death to more than one person; and (3) there was a probability that Nguyen constituted a continuing threat to society. Based upon these findings, the jury recommended sentences of death for the murders of the children and a sentence of life imprisonment for the murder of Donna Nguyen. The district court adopted the jury's recommendations and sentenced Nguyen to life imprisonment for the murder of his wife, and death by lethal injection for the murders of the children.

Petitioner filed a direct appeal from his convictions and sentences with the Oklahoma Court of Criminal Appeals. The court found the evidence had been insufficient to support the "heinous, atrocious, or cruel" aggravating factor; however, the remaining aggravating and mitigating circumstances were reweighed and the sentences of death were affirmed. Nguyen v. State, 769 P.2d 167 (Okla. Crim. App. 1988), cert. denied 492 U.S. 925 (1989).

Nguyen filed an application for post-conviction relief in state district court. An evidentiary hearing was conducted and relief was denied. The denial of relief was affirmed in Nguyen v. State, 844 P.2d 176 (Okla. Crim. App. 1992), cert. denied 509 U.S. 908 (1993). On May 4, 1994, the Oklahoma Court of Criminal

-5-

Appeals ordered a July 19, 1994, execution date. Nguyen filed a second application for post-conviction relief in state district court and that application was denied. The denial of relief was affirmed in Nguyen v. State, 879 P.2d 148 (Okla. Crim. App. 1994), and Nguyen's request for stay of execution was denied.

Nguyen filed this § 2254 action and an accompanying application for stay of execution on July 15, 1994. The district court stayed execution that same day. Ultimately, the court entered judgment denying relief on October 28, 1996. Nguyen filed a notice of appeal on November 20, 1996. He also filed an application for a certificate of appealability, which was granted by the district court on November 26, 1996.

## II.

Before addressing the issues raised by Nguyen on appeal, we address whether the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to this case. The AEDPA amended chapter 153 of title 28 of the United States Code governing all habeas proceedings in federal courts, and created a new chapter 154 governing state habeas proceedings filed by prisoners subject to capital sentences. See 110 Stat. 1217-26. Although the new provisions of chapter 154 are expressly applicable "to cases pending on or after [April 24, 1996], the date of enactment of [the AEDPA]," 110 Stat. 1226, a state can take advantage of them only if it satisfies the requirements of 28 U.S.C. § 2261(b) and (c). As for

the amendments to chapter 153 (which do not contain an effective date), the Supreme Court recently held they are generally not applicable to cases filed before AEDPA's effective date.  See Lindh v. Murphy, 117 S. Ct. 2059, 2068 (1997), overruling the holding of Lennox v. Evans, 87 F.3d 431 (10th Cir. 1996), cert. denied 117 S. Ct. 746 (1997), that § 2253(c) applied to cases pending when AEDPA was enacted, even though the habeas petition was filed before AEDPA's effective date.

Because the State of Oklahoma has not yet satisfied, or even argued it can satisfy, the requirements of § 2261(b) and (c), the expedited habeas procedures set forth in chapter 154 are inapplicable to this case.  See Green v. Johnson, 116 F. 3d 1115, 1120 (5th Cir. 1997) (reaching similar conclusion with respect to habeas action filed by Texas state prisoner facing capital sentence).  Further, because the habeas petition in this case was filed prior to AEDPA's effective date, the amendments to chapter 153 (including the requirement that a habeas petitioner obtain a certificate of appealability) are inapplicable as well.[1]  See Lindh, 117 S. Ct. at 2068.

Under pre-AEDPA standards, a state habeas petitioner cannot appeal a district court's ruling on a habeas petition unless a district or circuit judge issues

---

[1] We reach no conclusion concerning whether the amendments to 154 would be applicable if the State of Oklahoma could satisfy the requirements of § 2261(b) and (c).

a certificate of probable cause. 28 U.S.C. § 2253. To obtain a certificate of probable cause, a petitioner must make a "substantial showing of a denial of [a] federal right," Barefoot v. Estelle, 463 U.S. 880, 893 (1983), precisely the same showing a petitioner must make under AEDPA standards to obtain a certificate of appealability. See Lennox, 87 F.3d at 434. Because the district court granted Nguyen a certificate of appealability, he has satisfied the standards for a certificate of probable cause as well and is entitled to appeal the district court's denial of his habeas petition.

III.

**Competency to stand trial**

Nguyen contends he was not mentally competent to stand trial, arguing the facts of the crime itself, combined with his personal history as a Vietnamese refugee and his jealous and possessive behavior with both his wife and his subsequent girlfriend, suggest he suffers from a mental disorder. In addition, he points to affidavits from various mental health experts who opine that he may suffer from post-traumatic stress disorder (PTSD), bipolar disorder, or some other mental disorder that could have prevented him from forming the specific intent necessary for first degree murder and/or from being able to fully appreciate the nature of the charges against him and assisting his lawyer in preparation of his defense. Finally, Nguyen suggests the mental disorder has worsened, as

demonstrated by his post-conviction behavior in prison (he has allegedly not talked to anyone, including his attorneys and family, since a 1989 episode in which he barricaded himself in his prison cell).

Nguyen first raised this issue in his initial application for post-conviction relief in state court. The Oklahoma Court of Criminal Appeals concluded the issue was waived because it was not raised on direct appeal. Nguyen, 844 P.2d at 178 ("Issues which were not raised on direct appeal, but could have been raised are waived."). Generally, federal habeas review of procedurally barred issues is foreclosed "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). However, this general rule does not apply to substantive mental competency claims. Medina v. Singletary, 59 F.3d 1095, 1106-07 (11th Cir. 1995); see Sena v. New Mexico State Prison, 109 F.3d 652, 654 (10th Cir. 1997). Accordingly, we proceed to analyze the merits of the competency claim, rather than undertaking an analysis of cause and prejudice.[2]

---

[2] To the extent Nguyen intended to assert a procedural competency claim, see Pate v. Robinson, 383 U.S. 375 (1966), we conclude he has failed to show cause for his failure to raise the issue on direct appeal. See Medina, 59 F.3d at 1111.

-9-

Competence to stand trial requires that a defendant have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). Trial of an incompetent defendant violates substantive due process. Cooper v. Oklahoma, 116 S.Ct. 1373, 1376 (1996); United States v. Williams, 113 F.3d 1155, 1160-61 (10th Cir. 1997); Sena, 109 F.3d at 654. "A habeas petitioner is entitled to a nunc pro tunc evidentiary hearing for the purpose of proving that he was incompetent at the time of trial only 'when he makes a showing by clear and convincing evidence to raise threshold doubt about his competency.'" Carter v. Johnson, 110 F.3d 1098, 1106 (5th Cir. 1997) (quoting Lokos v. Capps, 625 F.2d 1258, 1261 (5th Cir. 1980)). "In order . . . to raise such doubt, [the petitioner] must present facts sufficient 'to positively, unequivocally and clearly generate a real, substantial and legitimate doubt' concerning his mental capacity." Id. (quoting United States v. Williams, 819 F.2d 605, 609 (5th Cir. 1987)).

After carefully reviewing the record in this case, we find no merit to Nguyen's competency argument. Although the crime itself was horrific and irrational, that alone cannot be equated with mental incompetence to stand trial. See Medina, 59 F.3d at 1107 ("neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence

to stand trial."). Nguyen had no prior history of mental illness or disorder (e.g., previous consultations or treatment with mental health professionals, previous hospitalizations, etc.), nor did he display any irrational or unusual behavior during the pretrial proceedings or trial. In fact, at a hearing conducted by the trial court approximately six months after trial, he spoke on the record and explained, in detail, why he wanted a new attorney appointed to represent him. See Transcript of 4/10/87 Proceedings, at 3-5 (differences of opinion with trial counsel concerning trial strategy). That testimony strongly suggests Nguyen was lucid at the time of trial, understood the charges against him, and participated in his own defense. The other factors to which Nguyen now points (e.g., abusive behavior toward wife and girlfriend, post-conviction behavior in prison) simply do not constitute clear and convincing evidence creating a real, substantial, and legitimate doubt as to his competence to stand trial. See Medina, 59 F.3d at 1106. We therefore reject his substantive competency argument and conclude the district court did not err in refusing to conduct a hearing on the issue.

**Ineffective assistance of counsel at trial**

Nguyen contends his trial counsel was ineffective in (1) failing adequately to investigate issues relevant to the sentencing phase of trial (i.e., his background and his mental competency) and failing to present a valid mitigation defense

during the sentencing phase; (2) failing to conduct adequate voir dire and object to the prosecutor's appeal to community outrage during voir dire; (3) failing to make opening statements in either phase of the trial; and (4) failing to object to inadmissible testimony from witnesses and to improper comments made by the prosecutor during closing argument in the guilt phase. In addition, Nguyen asserts his primary defense counsel was a veteran of the Vietnam war and was suffering from PTSD as a result of the war, and thus had an inherent conflict of interest in representing Nguyen.

Evaluating the effectiveness of counsel's assistance requires a two-part inquiry. To prevail, Nguyen must prove counsel's performance fell below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir. 1997). A claim of ineffective counsel is a mixed question of fact and law, which we review de novo.[3] Williamson, 110 F.3d at 1513.

_____

[3] Although the Oklahoma Court of Criminal Appeals concluded some of Nguyen's ineffective assistance claims were waived due to his failure to raise them on direct appeal, that does not preclude federal habeas review of those claims. Brecheen v. Reynolds, 41 F.3d 1343, 1363-64 (10th Cir. 1994).

*Failure to investigate background and present
mitigation evidence at sentencing phase*

During the sentencing phase of the trial, the prosecution introduced photographs of the crime scene and presented the testimony of Mychau Truong. Truong testified that, after she began living with Nguyen and moved with him to Louisiana, he began hitting her on a regular basis. She further testified that he told her to stay inside their trailer and not to look out the windows. Nguyen continued to hit Truong on an almost daily basis after they moved to Arizona, even after she became pregnant. Ultimately, Truong shot Nguyen during one of the beating episodes. Although counsel cross-examined Truong, the defense team did not present any type of mitigating evidence of its own.[4] During closing arguments in the penalty phase, defense counsel essentially asked the jury to exercise mercy and sentence Nguyen to life in prison rather than death by lethal injection. As indicated by the verdicts, the jury rejected this argument.

In his habeas petition, Nguyen contends his trial counsel failed to investigate mitigating evidence that could and should have been presented during the sentencing phase of the trial. In particular, he contends information concerning his "war-torn childhood, his danger, hunger and sickness filled months

---

[4] The defense team did seek to introduce the testimony of Betsy Payne, who allegedly would have testified about Nguyen's chances for parole if given consecutive life sentences. The trial court refused to allow Payne to testify.

-13-

as a refugee, and the traumatic days of adjustment to a totally foreign culture in the United States" would have served as "powerful" mitigating evidence. Opening Brief, at 25. In addition, he contends that various of his family members would have been willing to testify on his behalf during the sentencing phase.

"Because [the adversarial] testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies, [the Supreme Court has] noted that 'counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" Kimmelman, 477 U.S. at 384 (quoting Strickland v. Washington, 466 U.S. 668, 691 (1984)). We have emphasized that counsel's duty to investigate all reasonable lines of defense is strictly observed in capital cases. Williamson, 110 F.3d at 1514.

This issue was first raised by Nguyen in his first state post-conviction proceeding. The trial court conducted an evidentiary hearing on this issue and two of the three attorneys who represented Nguyen testified about their pretrial investigation and strategy for the sentencing phase. Pete Silva, the primary defense attorney, testified that "all of the[ir] investigation was geared toward not only presenting a defense to the instant charges, but to develop any information that we might be able to present to a jury in mitigation of the second stage."

Transcript of 4/19/90 Hearing, at 47. However, Silva's testimony suggests the defense team's primary source of information was the prosecution, who agreed to an "open-file" policy. Further, Silva acknowledged no attempts were made to contact anyone in Indiana (where Nguyen initially lived after coming to the United States), nor were any attempts made to obtain his medical records, immigration/naturalization records, or school records. Silva did exhibit a fairly detailed knowledge of Nguyen's background. According to Silva, this information came from Nguyen, Nguyen's sister (whom he alleges he talked with at least twice), and a review of police reports. Silva acknowledged he did not contact any family members other than Nguyen's sister, but instead simply asked her to have other family members contact him if they wanted to do so. His contacts with the sister were initiated by the sister rather than by Silva.

Johnnie O'Neal, who assisted Silva in the defense, testified he talked to Nguyen's sister and "an older lady" concerning the sentencing phase of trial on two or three occasions. O'Neal was unable to produce any notes from those conversations. He concluded at the time of trial that he could not come up with any viable mitigation theory. It was his recollection that they "could only find one person, the young lady that I've spoken of [Nguyen's sister], who was willing to testify for him in the second stage." Id. at 132. O'Neal further indicated there were other people who were either unwilling to testify or whose testimony would

-15-

have been "as adverse as it would have been positive." Id. However, O'Neal was unable to name any of those people, and he acknowledged some of them had positive things to say about Nguyen. O'Neal stated that Nguyen did not want his family to testify. Finally, O'Neal testified he "had made the decision that faced with the aggravating circumstances we had, one sole mitigation witness [i.e., Nguyen's sister] would have been ineffective to the jury and that the appellate record would look better and be in a better posture if we had no mitigation witnesses and were relying on a technical argument, if you will, based upon Betsy Payne's testimony." Id. at 140.

The lead prosecutor, Thomas Gillert, testified that his office contacted various people in Indiana to obtain background information on petitioner. He testified that he also talked to Nguyen's family members in Bartlesville, particularly his uncle. According to Gillert, the uncle "didn't have anything to say . . . that was in the least bit complimentary about the defendant, [and] did not want to testify and did not want anyone [else in the family] to testify [either]." Id. at 154. Gillert thought he had informed Silva about the results of his conversation with Nguyen's uncle.

The testimony of Silva, O'Neill, and Gillert is bolstered somewhat by excerpts from the trial transcript. Just prior to the sentencing phase, the following colloquy took place among O'Neill, Gillert, and the trial court:

THE COURT: So that what you are telling me, then, I take it, Counselor, is that you have no mitigating circumstances you want to offer outside of this one particular mitigating circumstance that I have refused concerning the Pardon and Parole Board [i.e., Ms. Payne] which I consider legislation.

MR. O'NEAL: That's correct, Judge. And the record should not reflect the Court is prohibiting us from offering any other mitigating circumstances, but we have made the choice to proceed or --

THE COURT: Very well.

MR. O'NEAL: -- had it made for us to proceed in this fashion.

* * *

MR. GILLERT: If I might also, for the purpose of the record in chambers, because these cases, assuming this goes on for a long time, I say this to some extent, if you will, for protection of defense counsel. There are members of this individual's family that live in Oklahoma, Bartlesville. And I can tell the Court that I have visited with them and I think counsel for the defense has stated it properly. There just simply is no one who will come forward to say, at least by way of thinking people we have talked to, to say anything good about him. And I just want to put that in the record because these things go a long time and somebody is going to be wondering what is going on here and that is what the deal was. There was no member of his family -- there are uncles and aunts and brothers and sisters and so on and none of them in our interview with them had anything that I thought would be of any help to anybody in mitigation. And I just thought for the record I would put that in.

Trial Transcript, at 812-14.

Nguyen has submitted affidavits from various family members controverting some of the testimony of Silva, O'Neill, and Gillert. In particular, his sister alleges Silva never asked her to provide any background information about their family; she further alleges she would have been willing to testify on her brother's behalf. Nguyen's uncle alleges he never told Gillert he was

-17-

unwilling to testify. To the contrary, he alleges that he and other family members would have been willing to testify and could have been easily contacted by the defense team. Nguyen's aunt likewise alleges that, although she and other family members would have testified, they were not contacted by Silva (or other defense team members) prior to trial. Finally, a woman named Janet Sharp, who had sponsored the Nguyen family when they came to the United States from Vietnam, provided an affidavit outlining Nguyen's background while living in Indiana.

Ultimately, we find it unnecessary to determine whether Silva and O'Neill were ineffective for failing to investigate potential mitigation evidence or for failing to present such evidence at the sentencing phase of trial because we agree with the district court that, even if all the above-described testimony concerning Nguyen's background had been introduced during the sentencing phase, it would have been insufficient to offset or in any manner to explain or justify the murders of the White children (for which Nguyen was sentenced to death). Accordingly, we conclude Nguyen was not prejudiced by his trial counsel's alleged failure to investigate and present mitigating evidence.

*Failure to investigate mental competency*

For the reasons outlined above, we conclude Nguyen's trial counsel was not ineffective for failing to investigate his mental competency.

*Failure to conduct adequate voir dire*

-18-

Nguyen contends he was deprived of his right to an impartial jury because his trial counsel failed to question potential jurors regarding their attitudes concerning the Vietnam war, Nguyen's race, and domestic abuse. He further contends his trial counsel failed to remove two jurors who were personally touched by violent crimes, and failed to object to the prosecutor's appeal to community outrage during jury selection. He also contends defense counsel questioned potential jurors in a way that caused them to ignore relevant sympathy arising from the evidence at the second stage of trial.

An attorney's actions during voir dire are considered to be matters of trial strategy. Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995). A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill chosen that it permeates the entire trial with obvious unfairness. Id.

Silva testified at the post-conviction hearing that he intentionally decided not to question potential jurors about the Vietnam war or Nguyen's race because he felt those areas could "taint the entire panel." Transcript of 4/19/90 Hearing, at 56. Accordingly, Silva testified that he elected to focus on whether potential jurors could give Nguyen a fair trial. We agree with the district court's conclusion that this tactic was neither unreasonable nor prejudicial to Nguyen. See Moore v. Butler, 819 F.2d 517, 520 (5th Cir. 1987) (rejecting similar

argument that defense counsel was negligent in failing to question potential jurors about racial prejudice). As for trial counsel's alleged failure to disqualify two potential jurors who had personal experiences with crime, we have reviewed the transcript of the questioning of those jurors and conclude neither demonstrated a prejudice toward the prosecution or against Nguyen as a result of their experiences. See United States v. Tegzes, 715 F.2d 505, 507 (11th Cir. 1983) (bias or prejudice toward crime does not disqualify person to sit as juror in criminal case as long as feelings do not lead to predisposition toward prosecution or accused). Finally, we conclude Nguyen was not prejudiced by defense counsel's statements to potential jurors that sympathy was not to play a part in the case. Accordingly, we reject Nguyen's argument that he was deprived of his Sixth Amendment right to an impartial jury.

*Failure to make opening statement and to object to*
*inadmissible evidence and improper remarks from prosecutor*

Nguyen contends his trial counsel was ineffective during trial for several reasons. First, he complains counsel did not make an opening statement in either phase of the trial. Second, he alleges counsel failed to object to inadmissible statements from a number of witnesses (e.g., testimony of Joseph White concerning a hearsay statement allegedly made by his wife when they entered their house; speculative testimony from forensic chemist Rebecca Rush that blood had been washed out of Nguyen's shirt). Third, he alleges counsel failed to

object to improper remarks made by the prosecutor during closing argument in the guilt phase.[5]

We conclude no prejudice resulted from any of these alleged errors. Defense counsel's failure to make an opening statement was nothing more than a tactical decision that did not adversely affect Nguyen. See United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993) (failure to present opening statement itself is not ineffective assistance of counsel); United States v. Miller, 907 F.2d 994, 1000 (10th Cir. 1990) (strategic decision to eschew opening statement, without more, does not constitute ineffective assistance of counsel). Even assuming the challenged testimony was inadmissible, counsel's failure to object to such testimony did not deprive Nguyen of a fair trial. As noted by the district court, the evidence of guilt was substantial, if not overwhelming. Thus, the testimony of White and Rush was too insignificant to have altered the outcome of the trial. Finally, none of the prosecutor's remarks during closing argument were so egregious that they deprived Nguyen of a fair trial.

*Inherent conflict due to defense counsel's likely PTSD*

---

[5] In his petition filed with the district court, Nguyen asserted additional errors on the part of trial counsel (e.g., failure to respond to juror's comment indicating he had made a decision prior to the close of the guilt phase). To the extent he intended to assert these additional errors on appeal, we reject them for the reasons set forth in the court's opinion.

Nguyen alleges Silva was likely suffering from PTSD due to his experiences in the Vietnam war and thus had an inherent conflict of interest in representing Nguyen, a person of Vietnamese descent. Although it is conceivable that a Vietnam veteran could have internal conflicts about representing a Vietnamese client, there is simply no reliable evidence in the record to substantiate the claim. At best, Nguyen has presented the affidavits of two mental health professionals who opine it is possible that Silva suffers from PTSD as a result of his experiences in Vietnam and that such PTSD could have affected his ability to represent Nguyen. We conclude this evidence is wholly insufficient to raise a colorable claim.

**Ineffective assistance of appellate counsel**

Nguyen contends he was denied effective assistance of appellate counsel on direct appeal because his appointed counsel failed to adequately research and brief the issues raised on direct appeal (the appellate brief was only twenty-one pages in length), failed to raise the issue of ineffective assistance of trial counsel, and failed to raise other critical issues on appeal (i.e., constitutionality of the "continuing threat" aggravator, and whether the flight instruction deprived Nguyen of the right to the presumption of innocence).[6]

---

[6] In his petition filed with the district court, Nguyen asserted appellate counsel
(continued...)

The district court addressed and rejected these arguments. Our scope of review is de novo. Williamson, 110 F.3d at 1513. Nguyen must show (as with his claims of ineffective assistance of trial counsel) both that appellate counsel's performance was deficient and that the deficient performance was prejudicial. Id.

We find no merit to the argument as to the length and adequacy of the brief filed by appellate counsel. Contrary to Nguyen's arguments, there is no correlation between the length of a brief and its quality. Although the appellate brief was relatively short, it was nevertheless effective (at least in part). As noted by both the Oklahoma Court of Criminal Appeals and the district court, appellate counsel was successful in challenging the "heinous, atrocious and cruel" aggravator. Accordingly, there is no basis for concluding appellate counsel's performance in preparing the brief was deficient, or that counsel's performance in this regard was prejudicial.

As for Nguyen's second and third arguments, the issues he claims should have been raised on direct appeal are addressed and rejected in other portions of

_____

[6](...continued)
failed to raise other issues on direct appeal (admission of blood spatter testimony, testimony about marital troubles, problems with jury instructions, irrelevant testimony during sentencing phase, failure to grant motion for directed verdict on the continuing threat aggravator). To the extent he intended to raise these issues on appeal, we affirm the court's determination that none of these issues have merit and that appellate counsel was not deficient for failing to raise them.

this opinion.  Thus, we conclude appellate counsel was not ineffective for failing to raise these issues on direct appeal.

**Improper use of peremptory challenges**

During voir dire, the prosecution exercised three peremptory challenges to excuse three African-American members (two men and one woman) from the jury panel.  Defense counsel moved for a mistrial, arguing the prosecution violated Batson v. Kentucky, 476 U.S. 79 (1986) (forbidding prosecutor from challenging potential jurors solely on account of their race or on the assumption that members of that race as a group will be unable to impartially consider the State's case).  The trial court rejected defense counsel's argument on the ground that Nguyen was not African-American and thus had no ground for objecting to removal of the three panel members.  Out of an abundance of caution, the court asked the prosecution to state on the record its reasons for challenging the three panel members.  The prosecution indicated it was challenging two of the prospective jurors based on their actions and responses while venirepersons.  As for the third prospective juror, the prosecution alleged it had information indicating such person had been wrongfully charged with a crime in a "horrible snafoo."  Nguyen raised the issue in his direct appeal and the Oklahoma Court of Criminal Appeals agreed with the trial court that Batson was inapplicable since Nguyen was not

African-American. Nguyen, 769 P.2d at 170. In addition, the court concluded the prosecution had come forward with race-neutral explanations for each of the three challenges. Id. During the hearing on his first post-conviction application, Nguyen attempted to again explore this issue by questioning the prosecutor about the decision to strike the three African-American venirepersons. The court refused to allow testimony on the issue on the ground that Nguyen was not African-American.

Nearly two years after Nguyen's conviction, the Supreme Court issued its opinion in Powers v. Ohio, 499 U.S. 400 (1991), holding a Batson-based equal protection claim can be asserted even when there is no racial identity between the defendant and the venirepersons allegedly discriminated against by the prosecutor's use of peremptory challenges. Relying on Powers, Nguyen renews his assertion in this habeas action that the prosecutor's striking of the three African-American jurors was improper.

Because Powers constitutes a new constitutional rule of criminal procedure, the Teague doctrine prevents it from being applied to disturb a habeas petitioner's conviction that became final prior to announcement of the new rule. See Van Daalwyk v. United States, 21 F.3d 179, 180 (7th Cir. 1994) (federal habeas petitioner, whose conviction was final prior to Powers, could not rely on Powers to challenge conviction); Farrell v. Davis, 3 F.3d 370, 372 (11th Cir. 1993) (state

-25-

prisoner); Echlin v. LeCureux, 995 F.2d 1344, 1351 (6th Cir. 1993); Holland v. McGinnis, 963 F.2d 1044, 1053 (7th Cir. 1992). Nguyen's convictions became final nearly two years prior to the issuance of Powers. Thus, he has no basis for challenging the prosecutor's decision to strike the three African-American venirepersons.

**Refusal to permit mitigating evidence during sentencing phase**

Nguyen contends the trial court violated his constitutional rights by refusing to allow him to present mitigating evidence during the sentencing phase of the trial. More specifically, he contends the court refused to allow him to present testimony of witness Betsy Payne regarding the amount of time he would likely spend in prison if given three consecutive life sentences. According to Nguyen, this testimony would have diminished the prosecution's argument that he posed a continuing threat to society, which was one of the aggravating factors ultimately found by the jury. Nguyen also contends the court erred in refusing to instruct the jury on his parole situation if given three consecutive life sentences.

In support of his arguments, Nguyen relies on Simmons v. South Carolina, 512 U.S. 154 (1994), in which the Court held a capital defendant must be permitted to inform his sentencing jury that he is parole-ineligible if the prosecution argues he presents a future danger. The district court concluded

Simmons was inapplicable since Nguyen would be eligible for parole under the Oklahoma sentencing scheme in existence at the time of his trial if he were sentenced to three consecutive life sentences. Although it is arguable that Simmons can be interpreted to allow a parole-eligible defendant to present evidence of the likelihood of parole if the prosecution argues he presents a future danger, it is unnecessary to decide the issue. While Nguyen's appeal was pending, the Supreme Court held Simmons is a new rule that, under the Teague doctrine, cannot be used to disturb a habeas petitioner's death sentence that became final prior to Simmons. O'Dell v. Netherland, 117 S.Ct. 1969, 1971 (1997). Because Nguyen's death sentences became final well prior to the issuance of Simmons, his sentences cannot be reversed on this ground.

**"Continuing threat" aggravating circumstance**

Under Oklahoma's statutory sentencing scheme, a separate sentencing proceeding is conducted in all cases in which a defendant is convicted of first degree murder. Okla. Stat. Ann. tit. 21, § 701.10. The purpose of the proceeding is twofold: to determine whether the defendant is eligible to receive the death penalty and, if so, whether he or she should in fact receive the death penalty. Id. During the proceeding, "evidence may be presented as to any mitigating circumstances or as to any of the aggravating circumstances" specifically outlined

in the Oklahoma sentencing statutes. Id. The death penalty may not be imposed unless the jury unanimously finds at least one of the statutory aggravating circumstances beyond a reasonable doubt, and finds beyond a reasonable doubt that the aggravating circumstances outweigh any mitigating circumstances. Id. at § 701.11.

Here, the prosecution filed a bill of particulars prior to trial alleging the presence of three aggravating factors: that Nguyen knowingly created a great risk of death to more than one person; that the murders were especially heinous, atrocious, or cruel; and that he constituted a continuing threat to society. At the sentencing phase of trial, the jury was informed of this bill of particulars and was asked to determine whether, in fact, any or all of the alleged aggravating factors existed. In pertinent part, the jury was instructed to determine whether "[t]here exists the probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." State District Court Record, at 123 (Suppl. Instr. 4). The jury found the existence of the three aggravating factors and that the aggravating factors outweighed any mitigating factors.

In his habeas petition, Nguyen contends the "continuing threat" factor utilized by the prosecution was unconstitutionally vague. In support of this contention, he argues the supplemental instructions provided to the jury at the conclusion of the sentencing phase did not provide the jury with sufficient

-28-

guidance for determining whether, in fact, this aggravating factor existed. Although Nguyen did not raise this issue on direct appeal, he contends he can satisfy the cause and prejudice standards, and thus avoid procedural default, because his appellate counsel was ineffective for failing to raise the issue. For the reasons outlined below, we conclude Nguyen can demonstrate neither cause nor prejudice.

The aggravating factor at issue here, commonly referred to as the "continuing threat" factor, is defined by statute as the "existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Okla. Stat. Ann. tit. 21, § 701.12(7). Although this court has never reviewed the constitutionality of this factor, the Oklahoma Court of Criminal Appeals has repeatedly rejected constitutional attacks on this factor, as have federal district courts in Oklahoma. See, e.g., Walker v. Ward, 934 F. Supp. 1286, 1289-91 (N.D. Okla. 1996) (holding continuing threat factor not unconstitutionally vague and citing other unpublished opinions from federal district courts in Oklahoma rejecting similar vagueness challenges); Malone v. State, 876 P.2d 707, 715 (Okla. Crim. App. 1994) (and cases cited therein); but see Williamson v. Reynolds, 904 F. Supp. 1529, 1569-71 (E.D. Okla. 1995) (concluding continuing threat factor is unconstitutionally vague). In rejecting such challenges, the Oklahoma Court of Criminal Appeals has specifically held

that "the phrase 'the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society' is clear and does not require further definition." Id. at 716.

In United States v. McCullah, 76 F.3d 1087 (10th Cir. 1996), cert. denied, 117 S.Ct. 1699 (1997), we emphasized that "vagueness review should be 'quite deferential' because 'mathematical precision' is not possible in the definition of aggravating factors." Id. at 1110 (quoting Tuilaepa v. California, 512 U.S. 967, 973 (1994)). Although an aggravating factor "may be unconstitutionally vague if it 'leave[s] the sentencer without sufficient guidance for determining the presence or absence of the factor,' id., a factor is not unconstitutional if it has some "'common-sense core of meaning . . . that criminal juries should be capable of understanding.'" Tuilaepa, 512 U.S. at 973 (quoting Jurek v. Texas, 428 U.S. 262, 279 (1976) (White, J., concurring)).

The United States Supreme Court has rejected a vagueness challenge to a nearly identical aggravating factor used by the State of Texas. Jurek, 428 U.S. at 274-75. Under the Texas sentencing scheme, a jury is required to decide "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Id. at 269. Rejecting arguments that it is impossible to predict future behavior and that the question is so vague as to be meaningless, the Supreme Court stated:

It is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does not mean that it cannot be made. Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system. The decision whether to admit a defendant to bail, for instance, must often turn on a judge's prediction of the defendant's future conduct. And any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose. For those sentenced to prison, these same predictions must be made by parole authorities. The task that a Texas jury must perform in answering the statutory question in issue is thus basically no different from the task performed countless times each day throughout the American system of criminal justice.

Id. at 274-75.

The same reasoning is applicable here. The fact that Oklahoma chooses to grant a sentencing jury wide discretion to make a predictive judgment about a defendant's probable future conduct does not render the sentencing scheme in general, or the continuing threat factor in particular, unconstitutional. Although this predictive judgment is not susceptible of "mathematical precision," we do not believe it is so vague as to create an unacceptable risk of randomness. To the contrary, we believe the question of whether a defendant is likely to commit future acts of violence has a "common-sense core of meaning" that criminal juries are fully capable of understanding. Accordingly, we conclude the continuing threat factor used in the Oklahoma sentencing scheme does not violate the Eighth Amendment.

In reaching our conclusion, we acknowledge Nguyen's reliance on

Williamson, in which a federal district court in Oklahoma concluded the

continuing threat factor was unconstitutionally vague. 904 F. Supp. at 1569-71.

Although Williamson perhaps expresses legitimate concerns about the Oklahoma

Court of Criminal Appeals' apparent inconsistency in defining what evidence will

support the continuing threat factor, it fails to discuss or even cite Jurek. For the

reasons outlined above, we conclude Jurek is persuasive, and indeed controlling,

on this issue.

In passing, we note Nguyen has attempted to distinguish Jurek on the

ground that the Texas sentencing scheme utilizes the continuing threat factor only

during the selection decision, while the Oklahoma sentencing scheme utilizes the

factor during both the eligibility decision and the selection decision. We are not

persuaded. Because the continuing threat factor is neither unconstitutionally

vague nor applicable to every defendant convicted of murder in the first degree, it

is properly used during both the eligibility decision and the selection decision.

See Tuilaepa, 512 U.S. at 972. Further, use of the factor in the selection process

in no way deprives a defendant of the individualized determination to which he is

entitled. Id. To the contrary, Oklahoma's sentencing scheme requires the

sentencing jury to consider any relevant mitigating evidence that a defendant

chooses to present. See Okla. Stat. Ann. tit. 21, § 701.11.

**Reweighing of aggravating and mitigating circumstances**

In his direct appeal, Nguyen argued the "especially heinous, atrocious, or cruel" aggravating factor was applied in an overbroad and unconstitutional manner. After reviewing the record, the Oklahoma Court of Criminal Appeals concluded the evidence did not support this particular aggravating factor, as the factor had been interpreted and limited in Stouffer v. State, 742 P.2d 562, 563 (Okla. Crim. App. 1987) (holding this factor applicable only to murders where torture or serious physical abuse to any victims present). Nguyen, 769 P.2d at 174. Specifically, the court concluded no evidence was presented to the jury indicating whether either of the child victims suffered prior to death. Notwithstanding this conclusion, however, the court noted the jury had found two other aggravating factors existed beyond a reasonable doubt--that Nguyen knowingly created a great risk of death to more than one person, and there existed a probability that he would constitute a continuing threat to society. After reviewing the evidence supporting these two aggravating factors, the court reweighed the aggravating evidence and the mitigating evidence and concluded a sentence of death remained appropriate:

> After a review of the record, we find that the sentences of death were not imposed under the influence of passion, prejudice, or any other arbitrary factor. Furthermore, after careful consideration of the evidence supporting the aggravating circumstances, and the evidence of circumstances which may in fairness and mercy be considered as extenuating or reducing the degree of moral

culpability, we find the sentences of death both factually substantiated and appropriate. Due to the overwhelming evidence of guilt, the jury's finding that the murders were heinous, atrocious, or cruel was at most harmless error. Nor can we say that the sentence of death is arbitrary or capricious after the inappropriately determined aggravating circumstance is removed from consideration and the aggravating and mitigating circumstances are reweighed.

Id. at 174-75 (internal citations omitted).

In his federal habeas petition, Nguyen asserts (1) the jury instruction defining the "especially heinous, atrocious, or cruel" aggravating factor was unconstitutionally vague on its face and warrants overturning his death sentence; (2) it was impossible for the Court of Criminal Appeals to conduct a proper reweighing because it was impossible to determine what mitigating factors were found by the jury; (3) the Court of Criminal Appeals did not have authority to reweigh the aggravating and mitigating factors; and (4) the Court of Criminal Appeals' action violated Nguyen's due process rights and is the equivalent of an ex post facto deprivation of his right to a life sentence. All of these arguments were rejected by the district court. Now, on appeal, Nguyen appears to be asserting only arguments (1) and (2).[7] In addition, he contends the Court of Criminal Appeals' harmless error analysis was inadequate because the court did

---

[7] To the extent Nguyen intends to assert on appeal the remaining arguments he presented to the district court on this issue, we agree with the district court's analysis and ultimate rejection of those arguments.

not examine the effect of the invalid aggravating factor on the jury's sentencing verdict.

As the district court correctly concluded, Nguyen's first argument is moot:

Not only was the jury properly instructed that the aggravator only applied where the murders had been preceded by torture or serious physical abuse, the subsequent finding of insufficient evidence to support the aggravator by the Oklahoma Court of Criminal Appeals in Petitioner's case defeats any claim for habeas relief premised upon this issue.

Doc. 18, at 48. Accordingly, we will focus on the remaining arguments asserted.

In Clemons v. Mississippi, 494 U.S. 738 (1990), the Supreme Court held nothing in the Constitution requires that a jury impose the sentence of death or make the findings prerequisite to imposition of such a sentence. Accordingly, the Court concluded a defendant's constitutional rights are not " infringed where an appellate court invalidates one of two or more aggravating circumstances found by the jury, but affirms the death sentence after itself finding that the one or more valid remaining aggravating factors outweigh the mitigating evidence." Id. at 745. In light of Clemons, it is apparent the Oklahoma Court of Criminal Appeals' decision to reweigh the aggravating and mitigating evidence did not violate Nguyen's constitutional rights.

Employing a de novo standard, we review the Oklahoma Court of Criminal Appeals' decision, reweighing the aggravating and mitigating factors to determine whether that court's independent reweighing of the aggravating and mitigating

factors afforded Nguyen "an individualized and reliable sentencing determination based on the defendant's circumstances, his background, and the crime." Id. at 749. The state court's factual findings as to the mitigating and aggravating factors are reviewed under the "rational factfinder" standard. Lewis v. Jeffers, 497 U.S. 764, 783 (1990); Stafford v. Saffle, 34 F.3d 1557, 1569 (10th Cir. 1994). As applied here, we conclude the decision was entirely appropriate. By repeatedly stabbing three of the four people in the Whites' home, it is obvious Nguyen knowingly created a great risk of death to more than one person. We note Nguyen has never challenged this aggravating factor. Likewise, the testimony of Mychau Truong supports the conclusion that Nguyen constitutes a continuing threat to society. In contrast, there is simply no mitigating evidence to outweigh the aggravating circumstances.

Nguyen's argument that the Court of Criminal Appeals could not have engaged in a proper reweighing because the jury made no written findings with respect to mitigating circumstances it found (if any) was expressly rejected by the Court in Clemons. 494 U.S. at 750 ("An appellate court . . . is able adequately to evaluate any evidence relating to mitigating factors without the assistance of written jury findings.").

Nguyen's argument that the Court of Criminal Appeals' harmless error analysis was improper is also without merit. In Clemons, the Court held even if

state law prevented a state appellate court from reweighing aggravating and mitigating circumstances, the state appellate court could nevertheless apply harmless error analysis in reviewing a death sentence imposed in reliance on an improper aggravating factor. Id. at 752. Specifically, the Court indicated it is proper for a state appellate court to "examine the balance struck by the [sentencing body] and decide that the elimination of improperly considered aggravating circumstances could not possibly affect the balance." Id. at 753. Although Nguyen's argument is somewhat unclear, he appears to be arguing the Court of Criminal Appeals' harmless error review was invalid because it did not recite the proper "beyond a reasonable doubt" standard and because it was not detailed. Even though Nguyen's characterizations may be accurate, we disagree with his assertion that the Court of Criminal Appeals' decision is therefore invalid. A reading of the decision indicates the court "covered both bases" by first reweighing the aggravating and mitigating circumstances and then engaging in harmless error analysis. Under Clemons, it was unnecessary to do both. Because the reweighing of factors was proper, any deficiencies in the harmless error analysis are essentially irrelevant. In any event, a de novo review demonstrates beyond a reasonable doubt that the result of the sentencing phase would have been the same had the improper aggravating factor been eliminated entirely.

**Instruction on flight**

During the guilt phase of trial, the trial court instructed the jury that Nguyen was "presumed innocent of the crime[s] charged, and the presumption continues unless, after consideration of all the evidence, you are convinced of his guilt beyond a reasonable doubt." State Court Record, at 80 (Instr. 2). The court also instructed the jury concerning Nguyen's departure after the crime:

> Evidence has been introduced of the defendant's departure shortly after the alleged crime was committed. You must first determine whether this action by the defendant constituted flight.
> The term flight, as it is used in this instruction, means more than departure or concealment. To be in flight, a defendant must have departed with a consciousness of guilt in order to avoid arrest.
> To find that the defendant was in flight you must find beyond a reasonable doubt that: First, the defendant departed; second, with a consciousness of guilt; third, in order to avoid arrest for the crime with which he is charged.
> If, after a consideration of all the evidence on this issue, you find beyond a reasonable doubt that the defendant was in flight, then this flight is a circumstance which you may consider with all the other evidence in the case in determining the question of the defendant's guilt or innocence. However, if you have a reasonable doubt that the defendant was in flight, then the fact of any departure is not a circumstance for you to consider.

Id. at 91 (Instr. 13).

In his habeas petition, Nguyen contends this flight instruction violated his due process right to a presumption of innocence because the instruction asked the jury to assume he committed the crimes with which he was charged. Nguyen further contends the instruction relieved the State of its obligation to prove him

guilty. In support of his contentions, he cites Mitchell v. State, 876 P.2d 682, 685 (Okla. Crim. App. 1993), in which the court held the same Oklahoma uniform jury instruction as given here was erroneous unless given under specific, limited circumstances (circumstances not present in Nguyen's case).

Because Mitchell was not issued until approximately four years after Nguyen's conviction became final, Nguyen did not raise this issue on direct appeal. Instead, he first raised the issue in his second application for post-conviction relief in the Oklahoma state courts. Nguyen, 879 P.2d at 149. The Oklahoma Court of Criminal Appeals rejected the issue on the ground that Mitchell represented a new, nonretroactive state law rule for the conduct of criminal prosecutions that was unavailable to Nguyen. Id. at 149 (citing Griffith v. Kentucky, 479 U.S. 314, 328 (1987)).

The district court agreed Mitchell "involve[d] a nonretroactive change in state law, and that the claim attacking the flight instruction was not viable during trial or on direct appeal." Doc. 18, at 57. Accordingly, the court concluded the claim was barred because neither trial counsel nor appellate counsel could be characterized as ineffective for failing to raise the issue. Nguyen contends the district court erred in finding a federal bar to habeas relief because, according to Nguyen, the Oklahoma Court of Criminal Appeals resolved the issue on the merits rather than on an independent and adequate state law ground.

We agree with the district court that this claim is subject to procedural default and that Nguyen's trial and appellate counsel were not ineffective for failing to raise the issue. Even if we were to agree that the issue was resolved on the merits by the Oklahoma Court of Criminal Appeals and is thus properly reviewable in the context of this habeas petition, we would not accept Nguyen's argument that the challenged instruction warrants setting aside his convictions.

A § 2254 petitioner has a heavy burden in attempting to set aside a state conviction based on an erroneous jury instruction. Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995). As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, "unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). In Henderson, the Supreme Court stressed "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" 431 U.S. at 154 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

> "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." The question . . . is not whether the [challenged] instruction is "undesirable, erroneous,

> or even 'universally condemned,'" but whether the instruction so infected the trial that the resulting conviction violates due process.

Maes, 46 F.3d at 984 (quoting Henderson, 431 U.S. at 154) (citations omitted). Nguyen clearly cannot meet this high standard. Without ultimately passing on the desirability of the challenged flight instruction, we conclude its use in this case did not so infect Nguyen's trial as to deprive him of a fair trial or due process of law. The challenged instruction informed the jury it first had to determine whether Nguyen's departure after the crime was committed constituted "flight." Only if it determined the departure constituted "flight" could it consider this as circumstantial evidence of guilt. Although the instruction could have been more artfully drafted, it did not allow the jury to conclude Nguyen was guilty simply because of his departure. To the contrary, it specifically indicated that evidence of departure could be considered only if the jury drew a specific set of inferences from the departure. See generally United States v. Myers, 550 F.2d 1036, 1049 (5th Cir. 1977) (outlining inferences that must be drawn in determining probative value of flight as circumstantial evidence of guilt). Nor did the instruction alter the presumption of innocence. The trial court specifically instructed the jury that Nguyen was presumed innocent and had to be proven guilty beyond a reasonable doubt. Nothing in the flight instruction controverted those general instructions. Accordingly, we conclude there is no merit to the assertion that the instruction violated Nguyen's constitutional rights.

**Prosecutorial misconduct**

Nguyen contends prosecutorial misconduct at trial violated his constitutional rights. Specifically, he complains the prosecutor commented on his failure to testify, referred to him as inhuman, and denigrated Vietnamese people as a whole.[8] All of Nguyen's arguments on appeal arise out of the prosecutor's closing argument during the guilt phase of trial. In pertinent part, the prosecutor argued that Nguyen's departure after the murders were committed was indicative of guilt:

> Tell you another thing it tells you about it, for four years -- for four years he never sees him again, his own child. Something happened that was so important to the Defendant that he would flee that morning before the bodies were even discovered by the Whites and never ever see his own child again.
> * * *
> To abandon your family, that simply is not human nature. He may be a Vietnamese, and in spite of some of the evidence, he is still human, though. That is not human nature. You don't leave. You don't disappear. You don't drop out of sight before the crime is even

---

[8] Nguyen also argued to the district court that the prosecutor misbehaved by (1) defining reasonable doubt for the jury during voir dire, (2) attempting to invoke sympathy for the victims during closing argument by suggesting they were subjected to "unimaginable terror," (3) asking that the parents of the child victims be allowed to sit in the courtroom during the sentencing phase, (4) stating his personal opinions during closing arguments in both phases of trial, (5) invoking notions of societal alarm during voir dire, (6) offering gruesome photographs of the crime scene and bodies into evidence, (7) arguing facts not in evidence concerning Nguyen's failure to see his son for four years after the murders, and (8) misleading the jury via admission of the shirt left at Brown's house on the night of the murders. None of these arguments are mentioned on appeal. To the extent that Nguyen intends to assert them on appeal, we adopt the findings and conclusions of the district court.

discovered to never be found again for four years. Why? There is only one reason why. There is only one way he could have known. There is only one way that could have been so important to him to abandon everyone for all of that time, and that is that he knew what the Whites were going to find when they got home and it was time to get out and disappear. And he did it. If there is any other explanation for his conduct, you have not heard it.

Trial Transcript, at 797-98.

The district court, after noting the second and third arguments were deemed waived by the Oklahoma Court of Criminal Appeals during the direct appeal, and after pointing out that Nguyen did not make a "cause and prejudice" argument concerning these arguments, concluded they were not cognizable on federal habeas review. As for the first argument (i.e., that the prosecutor commented on failure to testify), the court concluded the prosecutor's remarks were "not so egregious as to amount to a federal constitutional violation." Doc. 18, at 63. In particular, the court concluded "[t]he comments did not clearly and directly and unequivocally call attention to Petitioner's failure to testify, nor did they create the impression that the statements could only be rebutted by Petitioner personally." Id.

We review habeas claims of prosecutorial misconduct de novo, United States v. Ivy, 83 F.3d 1266, 1288 (10th Cir.), cert. denied, 117 S.Ct. 253 (1996), employing the standard set forth in Donnelly v. DeChristoforo, 416 U.S. 637 (1974). See Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir.), cert. denied 1997

WL 337238 (1997). In <u>Donnelly</u>, the Court held that prosecutorial misconduct in a state court violates a defendant's right to a fair trial only if the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." 416 U.S. at 643.

We agree with the district court's conclusions. Aside from the procedural bar preventing review of the second and third arguments, none of the prosecutor's comments were flagrant enough to have influenced the jury to convict on grounds other than the evidence presented at trial. See <u>Ivy</u>, 83 F.3d at 1288.

**Evidentiary hearing on habeas petition**

Nguyen acknowledges he was given a hearing on his first state post-conviction proceeding, but contends he "was never able to develop and to present fully the evidence supporting the factual allegations in the habeas petition." Opening Brief, at 90. In support of this contention, Nguyen argues the state hearing "was presided over by a biased judge who had predetermined the issues even before the evidentiary hearing began," <u>id.</u> at 91, and he was not allowed to fully question Silva concerning Silva's experiences in Vietnam and how those might have affected his conduct at trial. Accordingly, Nguyen claims the federal district court should have conducted an evidentiary hearing of its own rather than relying on the state district court's factual findings.

-44-

Federal courts entertaining habeas petitions must give a presumption of correctness to state courts' factual findings, "absent some reason to doubt the adequacy or the accuracy of the fact-finding proceeding." Medina v. Barnes, 71 F.3d 363, 369 (10th Cir. 1995) (citing 28 U.S.C. § 2254(d)). This presumption of correctness does not apply, and a federal court must grant an evidentiary hearing, if the habeas petitioner did not receive a full, fair, and adequate hearing in the state court proceeding on the matter sought to be raised in the habeas petition. Dever v. Kansas State Penitentiary, 36 F.3d 1531, 1535 (10th Cir. 1994).

Having reviewed the record on appeal, which includes the transcript of the evidentiary hearing in the first post-conviction proceeding, we conclude the district court was not obligated to provide Nguyen with a new evidentiary hearing. Although Nguyen contends the trial judge who conducted the post-conviction evidentiary hearing was biased, a review of the trial transcript and the post-conviction proceeding transcript reveals otherwise. Nguyen's only other argument is that the trial judge did not allow him to fully explore Silva's experiences in Vietnam. Although this is true, Nguyen fails to note that at the post-conviction proceeding his counsel was allowed to make an offer of proof with respect to each question to which the state objected and which the trial court sustained. In any event, this issue was clearly Nguyen's weakest argument.

Accordingly, there was no basis for the district court to either reject the state court's findings of fact or to conduct its own evidentiary hearing.

## IV.

The judgment of the district court is AFFIRMED.