UNITED STATES of America,
Plaintiff–Appellee,

v.

Andre Lawrence WILLIAMS,
Defendant–Appellant.

No. 89–6230.

United States Court of Appeals,
Tenth Circuit.

Dec. 26, 1990.

James F. Robinson, Asst. U.S. Atty., Oklahoma City, Okl. (Timothy D. Leonard, U.S. Atty., with him on the brief), for plaintiff-appellee.

June E. Tyhurst, Asst. Federal Public Defender, Oklahoma City, Okl. (Rand C. Eddy, Asst. Federal Public Defender, Oklahoma City, Okl., with her on the brief), for defendant-appellant.

Before HOLLOWAY, Chief Judge, MOORE, Circuit Judge, and BROWN, District Judge [*].

HOLLOWAY, Chief Judge.

In a joint trial, defendant-appellant Williams and one co-defendant, Henderson, were convicted of multiple counts involving the possession and distribution of cocaine. Williams was convicted on one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); one count of using or carrying firearms during and in relation to a drug

---

[*] Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

trafficking crime, in violation of 18 U.S.C. § 924(c); and two counts of opening or maintaining a premises for the purpose of distribution of cocaine, in violation of 21 U.S.C. § 856(a)(1). Henderson was convicted on these same four counts. Henderson's appeal from his convictions is decided by a separate unpublished order and judgment filed today.

## I.

A rock or "crack" cocaine distribution operation was discovered in Del City, Oklahoma, in January 1989 when an intelligence report alerted the police to drug sales taking place within the city at an apartment on Scott Street. I R.Tr. at 5. The police responded by sending a confidential police informant to the apartment to attempt to purchase cocaine.[1] *Id.* at 5.

The informant was able to make a cocaine purchase, and consequently, the police obtained a search warrant and returned the following day to execute the warrant.[2] *Id.* at 5. The search yielded over two thousand dollars in cash, a number of gold and silver coins, a quantity of rock cocaine, and two loaded firearms, one on the kitchen table and one on a stereo in the living room. *Id.* at 37–42. Amidst the cash recovered was a twenty dollar bill identified as one of the recorded bills with which the informant made his purchase of cocaine the previous day. *Id.* at 39. Also found during the warrant's execution was a promissory note or IOU which was in the possession of one of the suspects on the premises. The IOU was signed by a cocaine buyer, Johnson, and it evidenced a debt of $150, payable to Charles Dade and witnessed by Williams. *Id.* at 42, 101–05. Other items discovered in a closet at the Scott Street apartment were a traffic citation issued to

Thad Bennett, an alias used by Williams, and a criminal complaint of unlawful entry issued to Marvin Roberts, an alias used by Henderson.

Approximately two weeks later the Del City Police Department received word of another cocaine distribution operation at a house on Hampton Street in Del City. *Id.* at 11, 14. The police also sent a confidential informant to this house who successfully purchased cocaine with marked money. *Id.* at 22. The police returned the next day with a search warrant. *Id.* at 11. When they approached the house to execute the warrant, Henderson, standing outside the house, turned toward the house and whistled loudly. *Id.* at 12.

The police had an extremely difficult time gaining access to the house since the entrances had all been heavily barred. The officers had to enter by cutting an entrance through a wall of the house, taking at least five minutes. *Id.* at 66. When they did finally gain entry to the house, the only people within were Williams, Perkins, and two females. One loaded firearm, located in a drawer in the bathroom, and one rock of crack cocaine were recovered at the Hampton Street residence. *Id.* at 66, 84. In the closed garage was a Cadillac which belonged to Williams. *Id.* at 66–67.

A nine count indictment was returned in February 1989 charging Williams and Henderson, as well as Charles Robert Dade, Jr., Andre Earl Osborn and Billy Joe Perkins with various crimes involving the possession and sale of cocaine.[3] A jury trial of Williams, Henderson and Perkins took place on April 10 and 11, 1989.[4]

Williams and Henderson were both found guilty on four counts: Count I, conspiracy to possess with intent to distribute cocaine,

---

1. Serial numbers of money carried by the informant were recorded by the police to aid in its identification after any illegal transaction which might occur.

2. Andre Williams, David Henderson, Charles Dade, Andre Osborn and Billy Joe Perkins were all within the apartment at the time of the warrant's execution. I R.Tr. at 15, 61–63.

3. Osborn's motion to enlarge time and delay trial was granted. After his co-defendants' trial

he pleaded guilty to one of the counts against him. Osborn's other three pending counts were to be dismissed at sentencing. Dade is presently a fugitive.

4. Perkins was granted an acquittal on all counts pursuant to a motion for judgment of acquittal made after the close of the government's case in chief. I R.Tr. at 249.

in violation of 21 U.S.C. § 841(a)(1); Count V, using or carrying firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and Counts VI and IX, both for opening or maintaining a premises for the purpose of distribution of cocaine, in violation of 21 U.S.C. § 856(a)(1).

## II.

### A. Admission of Claimed 404(b) "Other Acts" Evidence

Williams argues that the trial judge incorrectly allowed certain evidence of other wrongful acts of Williams to be presented to the jury in violation of Federal Rule of Evidence 404(b).

#### 1. Exhibit 11—The IOU

■ The IOU, Exhibit 11, was introduced by the government during the testimony of the second witness, Officer Scully, at which time no objection was made by Williams and the exhibit was admitted. I R.Tr. at 42–44. The government, however, offered to re-introduce the note in evidence on the second day of trial at the close of the government's case. Id. at 229–30. At this second offer of the exhibit, Williams did object. Id. at 230. The court eventually ruled, rejecting the defendant's objections on the merits, that Exhibit 11 would be admitted. Id. at 249–50.

As mentioned earlier, the IOU was witnessed by Williams and it reflected a debt of $150 owed by Mark Johnson, a government witness, to Big Man,[5] who was not on trial. In describing the circumstances un-

der which the IOU was made, Johnson testified that Williams and Big Man threatened Johnson with a gun in order to obtain his signature on the IOU.[6] Johnson further testified that Big Man wanted the $150 as payment for seven rocks of cocaine given to Johnson the previous day. Id. at 101–05.

The defendant objected to this testimony concerning the armed threat of violence and the trial judge ordered a recess to discuss the evidentiary matter outside the hearing of the jury. Id. at 107. The judge began the hearing by noting his concern that some of the testimony might be inadmissible under Fed.R.Evid. 404(b). Id. at 108. The hearing concluded with the trial judge sustaining the objection and admonishing the jury to disregard the last question presented to Johnson and his response to that question. Id. at 118.

Defendant Williams claims that the IOU itself constituted inadmissible evidence of other criminal acts,[7] such as robbery or conspiracy to commit robbery, and that it is not within any of the Rule 404(b) exceptions. Alternatively, Williams asserts that even if the IOU was within the purview of the 404(b) exceptions, the evidence was inadmissible because its probative value was outweighed by its prejudicial effect.

Defendant further argues that the district court did not abide by the rule of United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir.1985), cert. denied, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986), that there must be "a specific articulation of the relevant purpose and specific infer-

---

**5.** Big Man has been identified as being Terry Brown, Jeffery Taylor, and Charles Dade. Charles Dade was one of the five persons charged in the indictment which led to the convictions from which this appeal is taken.

**6.** The relevant portion of the testimony was as follows:

Q (By Mr. Robinson) What conversation did you have with Big Man at that time?

A At that time he came in, he was kind of upset with me, I guess. Brought my title and registration, and also a little piece of paper, kind of like an IOU note. And he came in, Earl [Mr. Williams] came in with him. Earl had his hand behind his back. And we went into the kitchen, and we were kind of leaning over the

stove. And at that time that is when Big Man said, "I got this piece of paper, and you're going to sign it saying that you owe me this amount of money. And if you don't sign it, we're going to mess you up man." He said, "We're not playing; we're not bullshitting,"

Q What was Mr. Williams doing at this time?

A He was standing to my right, and he stuck that gun in my side.

Q Okay. When he came in—

MR. EDDY: Objection, Your Honor. Can we approach the bench?

I R.Tr. at 105.

**7.** Pursuant to Fed.R.Evid. 404(b).

ences to be drawn from each proffer of evidence of other [criminal] acts." This articulation is designed to encourage careful consideration of these often delicate evidentiary questions, as well as to provide the appellate court with an adequate record for review. *Id.* at 1437.

It is true that no explicit articulation was made of the purposes for which the IOU was admitted in evidence. We have held, however, that failure to articulate the reasoning behind an admission of possible 404(b) evidence is harmless error if "the purpose for admitting the other acts testimony is apparent from the record, and the district court's decision to admit was correct." *United States v. Record,* 873 F.2d 1363, 1375 n. 7 (10th Cir.1989) (quoting *United States v. Orr,* 864 F.2d 1505, 1511 (10th Cir.1988)); *see generally, Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (describing Congressional intent for Rule 404(b) admissions and the requirements which must be met to insure that such admissions are not unfairly prejudicial). We feel that the purpose for admitting the IOU is clear from the record. There is no doubt that the IOU was probative of the conspiracy charged. It served as corroboration of Johnson's testimony that the defendant Williams assisted Big Man, Charles Dade, in obtaining the IOU to ensure that money from a drug sale would be received.[8] Moreover, the IOU had Williams' name on it as witness to the document, thus indicating a substantial nexus between the drug conspiracy and Williams.

■ A more serious problem arises not out of the IOU itself, but out of the related testimony that when the IOU was obtained, Williams was threatening Johnson by sticking a gun in his side. This testimony was stricken and the jury was ordered to disregard it. I R.Tr. at 106, 118. An error in admission of evidence may generally be cured by withdrawing the evidence and instructing the jury to disregard it, except where the character of the testimony is such that it will create so strong

an impression on the jurors that they will be unable to disregard it. *Maestas v. United States,* 341 F.2d 493, 496 (10th Cir.1965). Moreover, we should here consider the matter in the context of all the evidence properly before the jury. Doing so, we are convinced that here the question and answer that were stricken did not influence the jury or had but very slight effect. *Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946).

Accordingly, we find no error in the district court's admission of the IOU and the handling of the related testimony.

### 2. Exhibit 20—The Traffic Ticket

■ Exhibit 20 was a traffic ticket issued to Thad Bennett, an alias for Williams. I R.Tr. at 183. When the government first attempted to offer the ticket in evidence, the defendant Williams objected on the ground that no connection had been established between the ticket and Williams, as well as on the basis that the ticket was inadmissible evidence of other acts.[9] *Id.* at 87. This objection was sustained by the trial court. *Id.* at 89. The government again tried to introduce Exhibit 20 in evidence at the close of its case in chief, and again Williams' counsel objected. *Id.* at 222–23. By this stage of the trial, however, testimony had been presented to the jury that Thad Bennett was an alias of Williams and that the address on the ticket was that of Williams' father. The trial court admitted the ticket.

Defendant Williams contends that the ticket was, on balance, more prejudicial than probative. He claims the ticket's probative value was minimal because it was solely to prove Williams' presence at the Scott Street apartment, an uncontested fact. The ticket is prejudicial, he says, because it indicates that Williams gave a false name and address to a police officer.

The government asserted at trial that the ticket was not introduced to show uncon-

---

**8.** The court's ruling striking the last question and answer, *see supra* note 6, of this part of the testimony left other testimony about the incident before the jury.

**9.** Pursuant to Fed.R.Evid. § 404(b).

tested presence, but instead to show that Williams had dominion and control over the apartment; that he was present in order to sell drugs, not buy them. *Id.* at 223–26. The government further noted that the ticket was found in a closet, an area which would not ordinarily be frequented by a casual visitor.

We feel that there was an ample basis to support the decision of the trial court to admit the ticket in evidence and, therefore, there was no abuse of discretion. There was sufficient probative value that on balance the evidence was properly admitted.

### III.

### A. Sufficiency of the Evidence

The defendant claims that there was insufficient evidence to convict him and, therefore, the trial court should have granted his motion for judgment of acquittal, made after the close of the government's case in chief. I R.Tr. at 232.

 · In reviewing such a ruling the evidence is deemed sufficient if it is such that when considered in the light most favorable to the government, *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1970) (emphasis in original); *See United States v. Jenkins,* 904 F.2d 549, 553 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 395, 112 L.Ed.2d 404 (1990); *United States v. Troutman,* 814 F.2d 1428, 1455 (10th Cir.1987). The evidence supporting a conviction must be substantial, raising more than a mere suspicion of guilt, *Troutman,* at 1455, although the evidence can be wholly circumstantial. *See United States v. Hooks,* 780 F.2d 1526, 1530 (10th Cir. 1986), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986); *United States v. Downen,* 496 F.2d 314, 318 (10th Cir. 1974), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974).

### 1. Count I.

### Conspiracy to Possess with Intent to Distribute Cocaine

 A conviction on this count requires that the government prove that two or more persons agreed to violate the law, that the defendant knew at least the essential objectives of the conspiracy, and that he knowingly and voluntarily became part of the conspiracy. *United States v. Fox,* 902 F.2d 1508, 1514 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990); *United States v. Saviano,* 843 F.2d 1280 (10th Cir.1988), *cert. denied,* 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 74 (1988). The government presented evidence which showed that Williams assisted Charles Dade, Big Man, in obtaining an IOU, from witness Mark Johnson, as payment for crack cocaine. I R.Tr. at 102–05. The IOU bore defendant's name as witness to the document. A traffic ticket bearing Williams' alias, Thad Bennett, and Williams' father's address was found in a hall closet at the Scott Street Apartment. Also found in the closet was another document, Exhibit 21, bearing the name and address of Williams' father. It was also shown that cocaine was being distributed from the Scott Street apartment and the Hampton Street house. And while mere presence is not enough to sustain a criminal conviction, we feel that the fact of Williams' being at both locations when the search warrants were executed is an added probative factor.

While the evidence was largely circumstantial, it is substantial. We hold that there was sufficient evidence from which a rational jury could determine Williams' guilt on Count I.

### 2. Count V.

### Using or Carrying Firearms During and in Relation to a Drug Trafficking Crime

Defendant argues that there was insufficient evidence to convict him on Count V and that the jury's verdict was impermissibly based upon stricken testimony.

 It is true that there was no evidence, other than the stricken testimony, which directly placed a gun in Williams' hand, but a § 924(c) conviction can be obtained when the defendant has "ready access" to the firearm and the firearm "was an integral part of his criminal undertaking

and its availability increased the likelihood that the criminal undertaking would succeed." *United States v. McKinnell,* 888 F.2d 669, 675 (10th Cir.1989) (quoting *United States v. Matra,* 841 F.2d 837, 843 (8th Cir.1988)); *United States v. Cardenas,* 864 F.2d 1528, 1533 (10th Cir.1989), *cert. denied,* 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989); *see United States v. Sullivan,* 919 F.2d 1403, 1430, 1431–32 (10th Cir.1990).

 Here the firearms were entwined with the drug operation. The success of such a retail distribution operation is predicated upon a steady flow of customers making purchases. The visible presence of firearms is a means of ensuring that none of these customers attempts a robbery. In this situation, the guns are certainly used to "embolden[ ] an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred...." *United States v. Stewart,* 779 F.2d 538, 540 (9th Cir.1985).

When the police executed the search warrant at the Scott Street apartment they found two loaded firearms, one next to several stacks of money on the kitchen table and one on a stereo in the living room. I R.Tr. at 37–42. Government witness Mark Johnson testified that while he was at Apartment 8 on January 6, 1989, to purchase crack cocaine he saw several guns. *Id.* at 140. There was testimony from several witnesses which indicated that guns were typically present and readily accessible in the apartment. *Id.* at 140, 163. Additionally, the jury heard testimony from Brookman, an Oklahoma State Bureau of Investigation (OSBI) agent, describing various aspects of a crack house operation. He described the high volume of customer traffic through these drug houses and detailed the critical role of firearms in the maintenance of a crack house. *Id.* at 213. Brookman also testified that he had never seen a crack house which did not contain firearms and that he believed, from interviews with arrested drug dealers, that guns are needed as a show of force to prevent robberies, as well as for actual use

should any robbery attempt materialize. *Id.* at 213–14.

The situation before us is unlike that in *United States v. Sullivan,* 919 F.2d at 1431, in which we held that one defendant, Mary Sullivan, could not be convicted under § 924(c)(1) because she had not carried or used a firearm during and in relation to the underlying drug conspiracy offense. In *Sullivan,* that defendant was arrested at her home, where no actual drug transactions occurred. There was no evidence that the defendant "carried or used" a gun during and in relation to the criminal operation. *Id.* at 1431–32.

Here, however, Williams was arrested in an apartment from which cocaine was distributed to the buyers. The jury heard testimony from an OSBI agent as to the high volume of traffic through crack houses and the need for guns to intimidate customers. Here, the display of firearms to the incoming customers represented valuable use, which the defendant and others relied on to facilitate their drug operation.

We hold that without the stricken testimony, which must be disregarded, there nevertheless was sufficient evidence to support the conviction of the defendant Williams on Count V.

### 3. *Counts VI and IX.*
### *Maintaining a Premises for the Purpose of Distribution of Cocaine*

 To convict a defendant on this charge under 21 U.S.C. § 856(a)(1), it is necessary to prove that the defendant: (1) knowingly (2) opened or maintained a place (3) for the purpose of manufacturing by repackaging, distributing, or using any controlled substance. *United States v. Onick,* 889 F.2d 1425, 1431 (5th Cir.1989). Police informants were able to purchase cocaine at both the Scott Street apartment and the Hampton Street house. When the warrant was executed at the Scott Street apartment, Williams was in the apartment. Also found, in a closet, were two documents which indicated that Williams' status in the house was not that of a casual visitor, but of one who had a substantial connection to

the apartment. In addition, there was testimony that Williams had helped to collect a debt for cocaine sold out of the apartment.

When the warrant was executed at the Hampton Street house the police officers had difficulty entering, due to steel bars installed at each entrance. The only people locked within were Williams, Perkins, and two females. Williams' Cadillac was parked in the closed garage. We are convinced that there was sufficient evidence for a reasonable jury to determine that Williams exhibited sufficient connection to activities at both the Scott Street apartment and the Hampton Street house to support his conviction on Counts VI and IX.

## IV.

### A. *Mitigating Role Offense Level Reduction*

Williams contends that the district court erred in refusing to lower his offense level pursuant to § 3B1.2 for his mitigating role in the offense as merely a minimal participant, *see* United States Sentencing Commission, *Guidelines Manual,* § 3B1.2. The decision whether to grant a level reduction under § 3B1.2 is basically a determination of fact which will not be disturbed on appeal unless it is clearly erroneous. *United States v. Alvarez,* 914 F.2d 213, 215 (10th Cir.1990); *United States v. Lord,* 907 F.2d 1028, 1031 (10th Cir.1990).

While Williams was not shown to have actual possession of cocaine or firearms, it is apparent from the record that there was substantial evidence for the court to conclude that he was a knowing, active participant in the cocaine distribution operation. We hold that the denial of a mitigating role offense level reduction was not clearly erroneous.

AFFIRMED.