936 F.2d 584
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Brad PARKINSON, Defendant-Appellant.
 No. 90-8034.
 United States Court of Appeals, Tenth Circuit.
 June 13, 1991.
 
 Before McKAY, SEYMOUR and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 McKAY, Circuit Judge.
 
 
 1
 Defendant-appellant Brad Parkinson was convicted by a jury on one count of conspiracy to distribute methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C. Sec. 846 (1988) and one count of using and carrying a firearm during a drug trafficking offense in violation of 18 U.S.C. Sec. 924(c). On appeal, Parkinson asserts that the government failed to present sufficient evidence to support the jury's verdict on either count.[1] In considering these claims, we "view the proof presented in the light most favorable to the government to ascertain if there is sufficient substantial proof, direct and circumstantial, together with reasonable inferences to be drawn therefrom, from which a jury might find a defendant guilty beyond a reasonable doubt." United States v. Sullivan, 919 F.2d 1403, 1431 (10th Cir.1990). Applying this standard, we conclude that the record contains sufficient evidence to sustain Parkinson's convictions on both counts.
 
 
 2
 In order to convict Parkinson on the conspiracy charge, the government was required to prove that " two or more persons agreed to violate the law, that the defendant knew at least the essential objectives of the conspiracy, and that he knowingly and voluntarily became part of the conspiracy." United States v. Williams, 923 F.2d 1397, 1402 (10th Cir.1990). The government alleges, and Parkinson does not dispute, that the government met the first requirement by proving the existence of a conspiracy between Ron Gillis and Marvin Aeschbacher to distribute methamphetamine in the vicinity of Gillette, Wyoming. The government also presented evidence that Parkinson purchased methamphetamine from Aeschbacher in Gillette, that he sold and otherwise distributed at least a portion of the drugs he purchased from Aeschbacher to other methamphetamine users in town, that he helped Aeschbacher cut the drug with another substance, Inositol, on at least one occasion and watched him cut it on others and that cutting methamphetamine in this manner was a routine part of Aeschbacher's distribution process. The jury also heard three police officers testify that Parkinson told them after his arrest that he knowingly and voluntarily accompanied Aeschbacher on a March 21, 1988 trip to retrieve, among other things, two ounces of methamphetamine from coconspirator Gillis and that he purchased Inositol during that trip at Aeschbacher's request knowing that it would be used to cut the drug. Finally, the jury heard testimony that Parkinson was at Aeschbacher's side later that day when Aeschbacher sold the two ounces of methamphetamine to a police informant. A rational jury could reasonably infer from this evidence that Parkinson was aware of the conspiracy to distribute methamphetamine in Gillette and that he knowingly became a part of it. That is sufficient to sustain Parkinson's conviction on the conspiracy count. Sullivan, 919 F.2d at 1429.
 
 
 3
 In order to convict Parkinson of violating 18 U.S.C. Sec. 924(c) by using and carrying a firearm during or in relation to a drug trafficking crime, the government was required to prove beyond a reasonable doubt either that Parkinson had " 'ready access' to the firearm" and that "the firearm 'was an integral part of his criminal undertaking and its availability increased the likelihood that the criminal undertaking would succeed,' " Williams, 923 F.2d at 1402-03, or that one of Parkinson's coconspirators committed this crime during and in the furtherance of the conspiracy and that this act was a reasonably foreseeable consequence of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 647-48 (1946). To meet this standard, the government presented evidence that coconspirator Aeschbacher owned one pistol that he kept at his residence in Gillette[2] and another pistol and a shotgun that he kept at coconspirator Gillis' residence in Glenrock, Wyoming. The government also presented evidence that drug transactions and related activities in furtherance of the conspiracy occurred at both locations and that firearms are routinely used by drug dealers for self-protection and enforcement. Several witnesses, including Parkinson, also testified that Parkinson assisted Aeschbacher in retrieving the shotgun from Glenrock and delivering it to the police informant in Gillette during the March 21, 1988 drug transaction. Under this circuit's broad reading of section 924(c), we find this evidence and the reasonable inferences therefrom to be sufficient to sustain the jury's conviction of Parkinson on the firearms charge. See, e.g., United States v. Moore, 919 F.2d 1471, 1475 (10th Cir.1990) (section 924(c) conviction sustained when jury could have concluded that firearm located in closet of room where drug transactions occurred " 'emboldened' [the defendant], providing him with protection for himself, [the illegal drugs] and the cash if the need arose").
 
 
 4
 The judgment of the United States District Court for the District of Wyoming is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The parties have requested that this case may be submitted for decision on the briefs. After examining the briefs and appellate record, we agree that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(f); 10th Cir.R. 34.1.2 The case is therefore ordered submitted without oral argument
 
 
 [2]
 This firearm was apparently mounted on the wall of a room in which Aeschbacher conducted drug related activities