## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

FELDON JACKSON, JR.,

      Petitioner-Appellant,

v.

JOHN SHANKS,

      Respondent-Appellee.

No. 97-2063

## ORDER

Filed May 5, 1998

Before **TACHA**, **KELLY**, and **LUCERO**, Circuit Judges.

      This matter is before the court on petitioner-appellant's petition for rehearing. Section VII. of the court's opinion filed on April 9, 1998, has been amended in response to the rehearing petition. The petition for rehearing is denied in all other respects. The amended opinion is attached to this order.

                             Entered for the Court

                             Patrick Fisher
                             Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 5 1998**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**PATRICK FISHER**
**Clerk**

FELDON JACKSON, JR.,

     Petitioner-Appellant,

v.

JOHN SHANKS,

     Respondent-Appellee.

No. 97-2063

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CV-92-1180)**

Judith A. Rosenstein, Assistant Federal Public Defender, Albuquerque, NM, for Petitioner-Appellant.

Patricia A. Gandert (Tom Udall with her on the brief), Assistant Attorney General for the State of New Mexico, Santa Fe, NM, for Respondent-Appellee.

Before **TACHA**, **KELLY**, and **LUCERO**, Circuit Judges.

**KELLY**, Circuit Judge.

Petitioner-appellant Feldon Jackson Jr. appeals from the district court's denial of habeas corpus relief. 28 U.S.C. § 2254. Upon recommendation of the magistrate, the district court refused to grant Mr. Jackson a certificate of appealability and dismissed his

petition. On appeal, Mr. Jackson advances numerous issues: (1) the death qualification of the jury pool prior to the selection of a panel for the guilt phase violated due process; (2) the admission of two autopsy photos, a victim's blood-covered clothing, and the prosecutor's inquiry "You did not happen to ask someone . . . how it felt to kill somebody?" individually and cumulatively deprived Mr. Jackson of a fair trial; (3) the inadvertent submission to the jury of a hearing transcript not admitted into evidence deprived Mr. Jackson of an impartial jury and due process; (4) Mr. Jackson's trial and appellate counsel rendered ineffective assistance; (5) several instances of alleged prosecutorial misconduct deprived Mr. Jackson of a fair trial and impartial jury; (6) the trial court failed to submit an instruction on diminished capacity to the jury in violation of due process; (7) Mr. Jackson was deprived of due process and an impartial jury when a juror and two witnesses were exposed to television coverage of the trial and the trial court refused to allow the jury to review transcripts of witness testimony; (8) the trial court lacked jurisdiction to try Mr. Jackson because he had not been served with a signed copy of the indictment; and (9) Mr. Jackson's convictions for felony murder and the underlying offense of armed robbery violated the double jeopardy clause. Our jurisdiction arises under 28 U.S.C. §§ 1291 and 2253. We construe Mr. Jackson's request for a certificate of appealability as a request for a certificate of probable cause,[1] grant it, and affirm the

_____

[1]The certificate of appealability provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) contained in 28 U.S.C. § 2253(c) do not apply to petitioners who filed prior to AEDPA's effective date of April 24, 1996. See United

district court's dismissal of his petition.

Background

Mr. Jackson was convicted of first degree felony murder, attempted murder, and armed robbery by a jury and sentenced to life imprisonment plus 26 years. See N.M. Stat. Ann. §§ 30-2-1(A)(2), 30-16-2, 30-17-2 & 31-18-16 (Michie 1978). In his direct criminal appeal, Mr. Jackson raised issues (1), (2) and (3), and the New Mexico Supreme Court affirmed his convictions. See I R. doc. 9 ex. H (State v. Jackson, No. 14,454 unpub. decision (Mar. 8, 1993)). In 1989, Mr. Jackson raised issue (8) in his first petition for state post-conviction relief, which the district court summarily dismissed. See id. exs. R, S. The Supreme Court then denied Mr. Jackson's timely petition for certiorari. See id. ex. T, U. In 1992, Mr. Jackson raised issues (4), (5), (6) and (7) in his second state petition for post-conviction relief. Again, the district court summarily dismissed his petition, noting that all issues presented by Mr. Jackson could and should have been raised in his direct appeal. See id. ex. W. Mr. Jackson's petition for certiorari to the New Mexico Supreme Court was denied. See id. ex. Y.

On October 21, 1992, Mr. Jackson filed the federal habeas petition on which this

---

States v. Kunzman, 125 F.3d 1363, 1364 n.2 (10th Cir. 1997), petition for cert. filed, (Feb. 14, 1998) (No. 97-8055). For Mr. Jackson to appeal his pre-AEDPA claims, a certificate of probable cause under former 28 U.S.C. § 2253 is required. See Lennox v. Evans, 87 F.3d 431,434 (10th Cir. 1996), cert. denied, 117 S. Ct. 746 (1997) (standard for granting either certificate requires petitioner to make a substantial showing of the denial of a federal constitutional right).

3

appeal is based, raising nine claims for relief. The state conceded Mr. Jackson exhausted state remedies, I R. doc. 9 at ¶ 3, but asserted that issues (4), (5), (6) and (7) were procedurally barred.[2] The magistrate recommended dismissal of those grounds, rejecting Mr. Jackson's position that issues (5) and (6) were implicitly raised in his cumulative error argument on direct appeal and that his default of issues (4) and (7) was excused due to ineffective assistance of counsel. See I R. doc. 20 at 6-8. The magistrate also recommended the denial of the petition, finding the remaining issues without merit. See I R. doc. 68 at 21. The district court adopted the magistrate's recommendations and dismissed the action with prejudice. See I R. doc. 21, 71. Mr. Jackson appealed.

Discussion

Our scope of review in federal habeas proceedings is limited; we may grant habeas relief to a state prisoner only if state court error "deprived him of fundamental rights guaranteed by the Constitution of the United States." Brinlee v. Crisp, 608 F.2d 839, 843 (10th Cir. 1979), cert. denied, 444 U.S. 1047 (1980). Because this case was filed before the enactment of the AEDPA, we apply pre-amendment standards of review. See Lindh v. Murphy, 117 S. Ct. 2059, 2063 (1997); Richmond v. Embry, 122 F.3d 866, 870 (10th

---

[2]The state also argued Mr. Jackson procedurally defaulted issue (8) in the original federal petition, which related to the trial court's failure to grant evidentiary hearings on two unrelated state post-conviction motions. Mr. Jackson agreed to the dismissal of that issue, see I R. doc. 19 at 1 n.1, and it is not before us. Thus, we only examine the issues presented in Mr. Jackson's opening brief to this court.

Cir. 1997), <u>cert. denied</u>, 118 S. Ct. 1065 (1998).  Though we review the legal bases for the district court's dismissal of Mr. Jackson's petition de novo,  see <u>Sena v. New Mexico State Prison</u>, 109 F.3d 652, 653 (10th Cir. 1997), we afford deference to the state court's construction of state law, <u>see Mullaney v. Wilbur</u>, 421 U.S. 684, 691 (1975).  We review the federal district court's factual findings for clear error, and presume the state court's factual findings are correct.  <u>See</u> 28 U.S.C. § 2254 (pre-amendment); <u>Nguyen v. Reynolds</u>, 131 F.3d 1340, 1359 (10th Cir. 1997).  We are not empowered to correct errors of state law.  <u>See King v. Champion</u>, 55 F.3d 522, 527 (10th Cir. 1995).

I.  Procedural Default of Issues (4), (5), (6), and (7)

Before examining the merits of Mr. Jackson's claims, we must examine whether the district court properly dismissed issues (4), (5), (6), and (7) on grounds of procedural default.  <u>See Watson v. State of New Mexico</u>, 45 F.3d 385, 387 (10th Cir. 1995).  Where a state has raised and preserved the issue of procedural default, federal courts generally do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice.  <u>See Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Steele v. Young</u>, 11 F.3d 1518, 1521 (10th Cir. 1993).  Procedural default is grounded in concerns of comity and federalism; it is not jurisdictional.  <u>See Coleman</u>, 501 U.S. at 730; <u>Lambix v. Singletary</u>, 117 S. Ct. 1517, 1522 (1997).

Relying on the magistrate's recommendations, the district court dismissed issues (4), (5), (6) and (7) as procedurally barred, noting the state court determined that "all matters complained of [in Mr. Jackson's second post conviction petition] could and should have been raised in the appeal of the trial jury's verdict and may not be raised at this time." See I R. doc. 20 at 5; I R. doc. 9 ex. W at 2. Mr. Jackson contends that the state court's finding of procedural default is not an adequate state ground. He argues New Mexico does not strictly or regularly apply the rule that issues not raised on direct appeal may not be raised in a habeas petition because state law specifically provides for exceptions to this general rule, allowing state courts discretion to hear defaulted claims in habeas review. See, e.g., Clark v. Tansy, 882 P.2d 527, 531 (N.M. 1994); Swafford v. State, 810 P.2d 1223, 1226 n.1 (N.M. 1991); State v. Gillihan, 524 P.2d 1335, 1337 (N.M. 1974). Mr. Jackson also contends that the arguments he presents to this court in issue (5) and (6) were effectively presented to and decided by the state court when that court considered the cumulative error argument he raised in his direct criminal appeal, which he also presents to this court as issue (2). We address these arguments in turn.

First, we agree with the district court's conclusion that claims (5), (6) and (7) were procedurally defaulted. As the state trial court implied in its dismissal of Mr. Jackson's second state post-conviction petition, New Mexico law provides that the failure to raise issues in a direct criminal appeal results in waiver of those claims for purposes of state post-conviction relief. See Gillihan, 524 P.2d at 1336. This rule is "adequate" for

6

purposes of federal habeas procedural default doctrine if "the [state] court's actual application of the . . . rule to all 'similar' claims has been evenhanded 'in the vast majority' of cases." See Maes v. Thomas, 46 F.3d 979, 986 (10th Cir.) (citing Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir. 1991), cert. denied, 502 U.S. 1110 (1992)), cert. denied, 514 U.S. 1115 (1995) .

Our review of New Mexico cases indicates that New Mexico courts have consistently and even handedly applied the rule waiving issues not raised on direct appeal for purposes of post-conviction relief. See, e.g., Duncan v. Kerby, 851 P.2d 466, 468 (N.M. 1993); State v. Cranford, 582 P.2d 382, 384 (N.M. 1978); State v. Wildenstein, 577 P.2d 448, 450 (N.M. Ct. App. 1978). The fact that New Mexico provides exceptions to this general rule does not indicate that New Mexico courts "have unfettered discretion" to consider the type of claims that Mr. Jackson has not raised on direct appeal, and the cases Mr. Jackson cites do not indicate otherwise. See Maes, 46 F.3d at 986-87; Gutierrez v. Moriarty, 922 F.2d 1464, 1469-70 (10th Cir.), cert. denied, 502 U.S. 844 (1991). Moreover, though Mr. Jackson argues he implicitly raised the arguments he presents to this court as issues (5) and (6) in his cumulative error argument on direct appeal, our review of the record indicates the New Mexico Supreme Court was not presented with the substance of these claims and did not examine them in Mr. Jackson's direct criminal appeal. The factual basis for the arguments Mr. Jackson raises in issues (5) and (6) existed at the time of Mr. Jackson's direct appeal, but Mr. Jackson instead

7

challenged only the cumulative effect of the three alleged errors presented as issue (2) of this appeal. See Duncan, 851 P.2d at 468. Thus, we may be precluded from considering issues (5), (6) and (7) in Mr. Jackson's federal petition because his failure to raise them in his direct criminal appeal constitutes an independent, adequate state procedural ground unless he has demonstrated cause and prejudice or a fundamental miscarriage of justice. See Maes, 46 F.3d at 985; Ballinger v. Kerby, 3 F.3d 1371, 1374-75 (10th Cir. 1993).

We disagree, however, with the district court's reason for Mr. Jackson's default of issue (4) -- an ineffective assistance claim raised for the first time in his second state post-conviction petition. In narrow circumstances, we have held that in habeas proceedings where "the underlying claim [defaulted] is ineffective assistance of counsel, . . . the 'general' rule [of waiver of claims not raised on direct appeal] must give way because of countervailing concerns unique to ineffective assistance claims." See Brecheen v. Reynolds, 41 F.3d 1343, 1363 (10th Cir. 1994), cert. denied, 515 U.S. 1135 (1995). These circumstances would seem to apply where, as here, petitioner had no opportunity to develop facts relating to his counsel's performance and had the same counsel during his trial and direct appeal. See id. at 1364. Absent the opportunity to consult with new counsel to ascertain whether counsel in his direct criminal proceedings performed adequately or develop facts relating to his counsel's performance, the state's imposition of a procedural bar "deprives [petitioner] of any meaningful review of his ineffective assistance claim." Id. at 1364; see Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir.

1988).  Thus, we disagree that Mr. Jackson's failure to raise his ineffective assistance claim on direct appeal procedurally bars us from considering his claim.  See Brewer v. Reynolds, 51 F.3d 1519, 1522 (10th Cir. 1995); Brecheen, 41 F.3d at 1364.

Although the state argues that Mr. Jackson's claim of ineffective assistance is nevertheless barred because he failed to raise the issue in his first state habeas petition, see Gillihan, 524 P.2d at 1336, the state court's denial of his second state habeas petition was not based on that procedural ground.  We are not inclined to rely on a state procedural rule that the New Mexico courts did not rely upon.  See Caldwell v. Mississippi, 472 U.S. 320, 326 (1985);  County Court v. Allen, 442 U.S. 140, 152-54 (1979);  Brasier v. Douglas, 815 F.2d 64, 65 (10th Cir.), cert. denied, 483 U.S. 1023 (1987).  Moreover, constitutionally ineffective assistance of counsel may establish cause excusing Mr. Jackson's procedural default of claims (5), (6), and (7), requiring us to reach the merits of his ineffective assistance claim anyway.  See Coleman, 501 U.S. at 753-54; McClesky v. Zant, 499 U.S. 467, 493-94 (1991).  However, because Mr. Jackson has not presented us with any evidence of a fundamental miscarriage of justice or cause beyond his allegations of ineffective assistance, and because we find herein that Mr. Jackson's ineffective assistance claims are without merit, Mr. Jackson has procedurally defaulted claims (5), (6) and (7).  See Coleman, 501 U.S. at 750; Murray v. Carrier, 477 U.S. 478, 497 (1986).  Moreover, because Mr. Jackson's factual allegations of ineffective assistance do not establish a Sixth Amendment violation, he is not entitled to an

9

evidentiary hearing.  See Church v. Sullivan, 942 F.2d 1501, 1510 (10th Cir. 1991).  We thus examine Mr. Jackson's remaining arguments on the merits.

## II.  Ineffective Assistance of Trial and Appellate Counsel

To prevail on his ineffective assistance of counsel claims, Mr. Jackson must first show that his counsel's performance was deficient.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  Mr. Jackson must allege facts that indicate counsel's representation "fell below an objective standard of reasonableness."  Id. at 688.  We presume that Mr. Jackson's counsel provided him reasonable professional assistance, and Mr. Jackson must overcome the presumption that, under the circumstances, the challenged representation "might be considered sound trial strategy."  Id. at 689 (internal quotation marks and citation omitted).  Mr. Jackson must also establish prejudice by showing "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  If Mr. Jackson fails to establish either the performance or prejudice prong of the Strickland test, we need not examine his argument further.  See id.

### A.  Failure to Call an Alibi Witness

Mr. Jackson first argues that his trial counsel's failure to call Johnnie May Roberts, an alibi witness, was unreasonable.  According to the affidavit Mr. Jackson attached to his request for an evidentiary hearing, Roberts would have testified Mr. Jackson was carried into William Seals's home by James Jackson and Sue Baby Ross at approximately 12:30

10

A.M. the night of the robbery, and that Mr. Jackson lay on the couch at William Seals's house until well after 3:00 A.M., when the robbery was committed. See I R. doc. 65 ex. 1 at 1. Mr. Jackson admits that trial counsel did not call Roberts to testify because he believed Roberts would be easily intimidated by the prosecutor due to her mental disabilities. See id. at 2.

We agree with the magistrate that trial counsel's informed tactical decision not to call Roberts was not unreasonable. Generally, the decision whether to call a witness rests within the sound discretion of trial counsel. See United States v. Snyder, 787 F.2d 1429, 1432 (10th Cir.), cert. denied, 479 U.S. 836 (1986). Here, counsel offered other witnesses who testified that Mr. Jackson was intoxicated the night of the robbery and that James Jackson and Sue Baby Ross assisted him into William Seals's house roughly three hours before the robbery occurred. Given that Roberts admittedly suffered from mental disabilities, Mr. Jackson's counsel could have reasonably determined that harmful testimony elicited during Roberts's cross-examination would far outweigh the benefit of testimony elicited during direct examination. Thus, trial counsel's judgment was reasonable, and cannot support an ineffective assistance claim.

B. Failure to Pursue a Diminished Capacity Defense and Jury Instruction

Mr. Jackson next asserts that trial counsel's failure to present evidence concerning the effect of intoxication on Mr. Jackson's intent and failure to seek an intoxication instruction during the guilt phase of his trial was unreasonable because competent

11

evidence supported a finding that Mr. Jackson was hypoglycemic, borderline mentally retarded, and extremely drunk the night of the robbery. Yet, trial counsel's defense was that Mr. Jackson was not present and did not participate in the robbery. Pursuing a diminished capacity defense would have been inconsistent with Mr. Jackson's complete denial of involvement in the robbery. Trial counsel's decision not to present inconsistent defense theories does not constitute ineffective assistance. See Nelson v. Nagle, 995 F.2d 1549, 1554 (11th Cir.), reh'g denied, 7 F.3d 242 (1993). Similarly, counsel's failure to seek an intoxication instruction was reasonable, because the instruction would have conflicted with his chosen trial strategy. See United States v. Cox, 83 F.3d 336, 341 (10th Cir. 1996). Counsel's decision to not pursue an intoxication defense or instruction was reasonable, and thus not deficient.

C. Failure to Object to the Trial Court's Denial of Jury's Request to Review Transcripts

Mr. Jackson further questions trial counsel's failure to object to the trial court's denial of the jury's request to review certain transcripts during its deliberations, arguing that without review of the transcripts the jury was left to speculate about the testimony of key witnesses. How counsel's failure to object constitutes deficient performance or how it prejudiced Mr. Jackson is not apparent. We do not even know if "transcripts" of the trial testimony existed, and even construing the jury's request as one for a "read-back" of certain testimony by the court reporter, counsel could have reasonably believed that

12

allowing the requested "read-backs" would have unduly focused the jury's attention on the testimony of those witnesses, no small concern considering the jury requested review of inculpatory identification and eyewitness testimony. See Trial Transcript Tape 22, 23 (jurors' request to review transcripts of testimony of Sue Baby Ross, William Seals, Brian Spence, and Feldon Jackson); Routly v. Singletary, 33 F.3d 1279, 1289 (11th Cir. 1994), cert. denied, 515 U.S. 1166 (1995). Moreover, even had Mr. Jackson's counsel objected and raised this issue on appeal, it is unlikely the New Mexico Supreme Court would have disturbed the trial court's decision to keep such testimony from the jury. See, e.g., Rule 5-610(A) NMRA 1998 (Michie 1997) (allowing for reading of testimony upon jurors' request "in the discretion of the court"); State v. Montoya, 523 P.2d 814, 815 (N.M. Ct. App. 1974) (holding court's decision to allow testimony read back lies in the discretion of the trial judge). Thus, counsel's failure to object was neither deficient nor prejudicial.

D. Failure to Move for Mistrial or Juror Disqualification

Mr. Jackson also argues that his trial counsel unreasonably failed to move for mistrial or disqualification of a juror who was exposed to media coverage of Mr. Jackson's trial. The record reflects, and Mr. Jackson admits, that the juror was not directly exposed to media coverage of the trial but was instead informed by members of her family that they had seen her and the other jurors on a television news show. See Trial Transcript Tape 9; I R. doc. 68 at 19-20. Nonetheless, Mr. Jackson argues that the juror's note informing the trial judge of this information implies the juror was exposed to

13

pretrial publicity, disregarded the court's instructions to avoid publicity, and contaminated other jurors. The record indicates, however, that the juror was simply informed by her family that her image was shown on television, and there is no indication that she personally viewed or heard the broadcast. Absent evidence to the contrary, we presume that the juror followed the court's repeated instructions to avoid trial publicity. See United States v. Rivera, 778 F.2d 591, 600 (10th Cir. 1985), cert. denied, 475 U.S. 1068 (1986); Trial Tapes 1, 3, 7 and 9. Moreover, Mr. Jackson's reliance on Government of Virgin Islands v. Weatherwax, 20 F.3d 572 (3rd Cir. 1994), is misplaced, as Mr. Jackson has presented no evidence that the juror was actually exposed to the broadcast. See id. at 577. Thus, counsel's failure to seek removal or mistrial was neither prejudicial nor deficient under Strickland.

E. Failure to Raise Issues on Appeal as Individual and Cumulative Error

Mr. Jackson finally argues that trial counsel unreasonably failed to raise a multitude of unfavorable evidentiary rulings on appeal as both individual and cumulative error. The Sixth Amendment, however, "does not require an attorney to raise every nonfrivolous issue on appeal." See Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995) (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)). It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed. See Tapia v. Tansy, 926 F.2d 1554, 1564 (10th Cir.), cert. denied, 502 U.S. 835 (1991). Absent counsel's omission of

14

an obvious winner on appeal, we are not inclined to second-guess appellate counsel's decision to eliminate arguable but weak claims. See United States v. Cook, 45 F.3d 388, 394-95 (10th Cir. 1995).

We agree with the magistrate and district court that Mr. Jackson has asserted no obvious winners in this petition. In fact, Mr. Jackson's petition fails to assert any authority indicating the evidentiary issues omitted by counsel were individually meritorious, and we have found none. See id. at 392-93. Accordingly, appellate counsel's failure to raise them individually was not deficient. Moreover, because Mr. Jackson has failed to establish that any of the omitted evidentiary rulings were individually erroneous, counsel's failure to raise them as cumulative error was similarly not deficient. See Jones v. Stotts, 59 F.3d 143, 147 (10th Cir. 1995).

### III. Issue (1) -- Death Qualification

Mr. Jackson contends that New Mexico's jury death qualification process, which disqualifies prospective jurors who indicate they will not impose the death penalty under any circumstances, resulted in the disqualification of the only two African-Americans in the jury pool and deprived him of due process and a fair trial. Mr. Jackson does not raise a Batson challenge, see Batson v. Kentucky, 476 U.S. 79, 100 (1986); United States v. Johnson, 941 F.2d 1102, 1108 (10th Cir. 1991); instead, he seeks a new trial before a jury which has not been death qualified. We are constrained, however, by the Supreme Court's decision in Lockhart v. McCree, 476 U.S. 162 (1986), which held that the

15

Constitution does not prohibit states from death qualifying juries in capital cases. See id. at 173-74. Mr. Jackson is thus not entitled to a new trial on this ground.

### IV. Issue (2) -- Cumulative Error

Mr. Jackson asserts that the admission of two autopsy photos and a victim's blood-covered clothing combined with the prosecutor's question "You did not happen to ask someone . . . how it felt to kill somebody?" individually and cumulatively deprived him of a fair trial. We address each argument individually.

First, regarding Mr. Jackson's claim of prosecutorial misconduct, Mr. Jackson must establish that the prosecutor's actions were so egregious as to render the trial fundamentally unfair, and we make that determination considering the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial. See Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Robison, 829 F.2d at 1508-09. When evaluating claims of prosecutorial misconduct based on improper remarks made by the prosecutor, we "look . . . at the strength of the evidence against defendant and decide whether the prosecutor's statements . . . 'could have tipped the scales in favor of the prosecution.'" See Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (internal quotation and citation omitted), cert. denied, 515 U.S. 1122 (1995).

In light of the considerable evidence implicating Mr. Jackson in the murder and robbery, we believe the prosecutor's question did not fundamentally impair "the jury's ability to judge the evidence fairly." See id. (quoting Hopkinson v. Shillinger, 866 F.2d

16

1185, 1210 (10th Cir. 1989)).  Even assuming the question improper, independent evidence existed upon which the jury could have properly based a verdict.  Mr. Jackson was identified at trial as the perpetrator by the surviving victim and was placed at the scene of the crime by Sue Baby Ross. After review of the entire record, including the other prejudicial circumstances Mr. Jackson forwards, we conclude that even if the prosecutor's question constituted error it did not have a "substantial and injurious effect" on the verdict.  Brecht v. Abrahamson, 507 U.S. 619, 638 (1993) (internal quotation marks and citations omitted).  For that reason, Mr. Jackson is not entitled to relief on this ground.

Second, Mr. Jackson's due process arguments relating to the admissibility of the victims' clothing and autopsy photos similarly will not support habeas relief "absent fundamental unfairness so as to constitute a denial of due process of law."  Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990).  Because we approach the fundamental fairness analysis with "considerable self-restraint," United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc), we do not believe Mr. Jackson has established that either evidentiary ruling deprived him of due process.  The trial court's admission of the autopsy photographs was upheld by the New Mexico Supreme Court as a proper exercise of the trial court's discretion in admitting photographs into evidence.  See I R. doc. 9 ex. H at 3; State v. Sedillo, 414 P.2d 500, 502-03 (N.M. 1966).  Though admittedly unpleasant, the photographs illuminated and clarified the forensic pathologist's testimony.

17

Mr. Jackson has not forwarded any persuasive reasons why we should disturb that ruling, and we are not inclined to do so. See, e.g., United States v. Treas-Wilson, 3 F.3d 1406, 1410 (10th Cir. 1993), cert. denied, 114 S. Ct. 739 (1994); United States v. Sides, 944 F.2d 1554, 1562 (10th Cir.), cert. denied, 502 U.S. 989 (1991).

Similarly, the New Mexico Supreme Court affirmed the trial court's admission of the clothing, noting it "was relevant to show the position of the bullet holes as well as the distance between the victim and the weapon when it was fired." I R. doc. 9 ex. H at 3. Though Mr. Jackson argues that the clothing's evidentiary value, if any, was outweighed by its cumulative and prejudicial nature, we do not find the admission of the clothing "shocking to the universal sense of justice." Rivera, 900 F.2d at 1477.

Finally, Mr. Jackson argues that these three instances, combined with other allegedly prejudicial circumstances not raised below, cumulatively deprived him of due process. Though we have held that cumulative errors may produce a fundamentally unfair trial warranting habeas relief, we may evaluate only the cumulative effect of matters determined to be error. See id. at 1471. Even assuming the prosecutor's improper questioning constituted error, the evidentiary rulings did not, and we have already determined that Mr. Jackson is not entitled to relief on that ground. Because Mr. Jackson has not established that cumulative error occurred, his cumulative error claim, by definition, fails. See id.

18

## V.  Issue (3) -- Transcript Not in Evidence

Mr. Jackson argues that the inadvertent submission of an unadmitted exhibit to the jury during deliberations violated his right to an impartial jury.  The exhibit at issue was presented as a defense exhibit during Mr. Jackson's pretrial hearing challenging the death qualification of the jury, and consisted of a motion hearing transcript in an unrelated case in which attorneys argued that jurors selected through the death qualification process tend to be conviction-prone and unfair.  Mr. Jackson contends that the jurors' exposure to this material resulted in the defense's loss of credibility and improperly infected the jurors' deliberation, resulting in a verdict based on extrinsic, extremely prejudicial information.

Mr. Jackson admits, however, that upon discovery of the inadvertent submission of the transcript, the court instructed the jury to disregard the exhibit entirely, and polled each juror individually regarding their inspection of the transcript.  Seven jurors replied they had read only the cover page of the transcript, which displayed only the caption and attorney appearances in the unrelated case.  The other five jurors indicated they had not examined the transcript at all.  See Aplt. Br. at 43.  We presume these factual findings are correct.  See 28 U.S.C. § 2254(d).  We also presume that the jury followed the trial court's instruction to disregard the transcript.  See United States v. Hollis, 971 F.2d 1441, 1455 (10th Cir. 1992), cert. denied, 507 U.S. 985 (1993).  Thus, Mr. Jackson's argument fails, given the presumption that no juror examined the substance of the unadmitted transcript and Mr. Jackson's failure to allege facts sufficient to overcome that

presumption.

Even were we to accept Mr. Jackson's assertion that the jurors' statements were simply incredible in light of the circumstances, the trial court's instruction to disregard the transcript's contents, which we presume the jury followed, would have cured any error. See United States v. Williams, 923 F.2d 1397, 1401 (10th Cir. 1990), cert. denied, 505 U.S. 925 (1991). Accordingly, Mr. Jackson is not entitled to habeas relief on this ground.

## VI.  Issue (8) -- Indictment Not Signed by Grand Jury Foreman

Mr. Jackson contends that the state court acted without jurisdiction by convicting him without having served him with a copy of the criminal indictment signed by the grand jury foreman.  We disagree.  Rule 5-201(D), on which Mr. Jackson relies, simply provides that criminal indictments must be signed by the grand jury foreman. See Rule 5-201(D) NMRA 1998.  The record proper indicates the indictment filed with the district court was signed by the foreperson. See State Record Proper at 1-2.  Mr. Jackson's reliance on English v. United States, 42 F.3d 473 (9th Cir. 1994), is misplaced, as Mr. Jackson does not allege that the district court improperly allowed a magistrate to conduct voir dire in his criminal trial without his consent. See id. at 476.  Mr. Jackson cites to no other relevant state or federal authority supporting his argument, and we have uncovered none.  Accordingly, Mr. Jackson's claim that the district court lacked jurisdiction is without merit.

## VII.  Issue (9) -- Double Jeopardy

Mr. Jackson finally argues that the district court improperly convicted him of both felony murder and the predicate offense of armed robbery in violation of the double jeopardy clause.  Though Mr. Jackson pled this as a new and separate claim in his opening brief to this court, our review of the record indicates Mr. Jackson originally raised this argument as part and parcel of issue (6) in the original federal petition.  See I R. doc. 1 at 8; I R. doc. 65 at 25-26.  As we noted before, the magistrate and district court correctly held that issue (6) -- which included Mr. Jackson's double jeopardy argument -- was procedurally barred.  See I R. doc. 20 at 7-8.   Apparently, however, Mr. Jackson raised and was granted review of his double jeopardy claim in an unrelated state habeas petition.  See Jackson v. State, 925 P.2d 1195 (N.M. 1996).  Thus, Mr. Jackson's double jeopardy claim was considered on the merits by New Mexico's highest court, allowing us to review Mr. Jackson's double jeopardy claim on the merits as well.  See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Nieto v. Sullivan, 879 F.2d 743, 746 (10th Cir.), cert. denied, 493 U.S. 957 (1989).

Mr. Jackson argues State v. Contreras, 903 P.2d 228, 233 (N.M. 1995), controls here, but Contreras was decided in 1995, well after Mr. Jackson's convictions became final.   In reviewing Mr. Jackson's double jeopardy claim, the New Mexico Supreme Court held Contreras should be given prospective application only, foreclosing Mr. Jackson's double jeopardy argument.  See Jackson, 925 P.2d at 1197.   Whether we

21

construe Mr. Jackson's argument as a direct challenge to the New Mexico Supreme Court's retroactivity analysis or as a federal constitutional claim, Mr. Jackson's claim fails. The Constitution does not impose any requirement that state judicial decisions be applied retroactively, see Andrews v. Shulsen, 802 F.2d 1256, 1270 (10th Cir. 1986), cert. denied, 485 U.S. 919 (1988), and the issue whether a state court decision applies retroactively is a state law issue, see Tucker v. Makowski, 883 F.2d 877, 881-82 (10th Cir. 1989), upon which we may not issue a writ of habeas corpus. See Andrews, 802 F.2d at 1271.

AFFIRMED. Mr. Jackson's request for a certificate of appealability is construed as a request for a certificate of probable cause and is GRANTED.